| 94 | 39 |
|-----|------|
| 104 | 152 |
| 94 | 39 |
| 110 | 439 |

EDWARD D. SILVERS ET AL. v. THE MICHIGAN MUTUAL
BENEFIT ASSOCIATION OF HILLSDALE.

[See 84 Mich. 521.]

*Mutual benefit associations—Certificate of insurance—Heirs of
member—Insurable interest—Action at law—Pleading.*

1. The statute under which a mutual benefit association is organized, in force when a contract of insurance is made, forms a part of the contract, and governs as to its construction.

2. Under a certificate of insurance issued by a mutual benefit association organized under Act No. 104, Laws of 1869, prior to the revisory act of 1887 (Act No. 187) taking effect, by which the association agrees to pay the insurance to the wife, *heirs*, administrator, or assigns of the member, the insurance is payable to his surviving brothers and sisters and the children of a deceased brother, in case his wife and children and father and mother do not survive him.

3. Act No. 187, Laws of 1887, which revises the laws providing for the incorporation of mutual benefit associations, and prohibits the issuance of a policy or certificate "upon any life in which the beneficiary named has not an insurable interest," but which provides that in case of a violation of said prohibition the insurance shall be payable to the *heirs* of the deceased member, is construed as embracing heirs who have not an insurable interest in the life of the member.

4. Where the heirs of a deceased member of a mutual benefit association are entitled to a certain sum specified in the certificate of insurance if the assessment, which it is the duty of the association to make, produces that amount, and the association refuses to make such payment, the heirs may recover the sum named under a declaration alleging such facts, and the performance of the contract on the part of the member, supported by proof of such performance and of the refusal of the association to make the assessment, and that, if made, it would have produced more than the amount claimed.

5. An amendment substituting the brothers and sisters of a member of a mutual benefit association, and the children of a deceased brother,—who, as his heirs, are entitled to the insurance agreed to be paid, by reason of the death of the member's

wife, who was named as beneficiary, and of his children, prior
to his death,—as plaintiffs in a suit brought at the instance of
his administrator in the name of the administrator of his wife's
estate, to recover the insurance, is permissible.[1]

Error to Lenawee. (Lane, J.) Submitted on briefs
October 13, 1892. Decided December 22, 1892.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts
are stated in the opinion.

*A. F. Freeman* and *Wood & Bird,* for appellants.

*Watts, Bean & Smith,* for defendant.

LONG, J. June 7, 1887, the defendant issued to Frank
L. Silvers its benefit certificate for the sum of $3,000,
to continue in force by the payment of the sum of $1.50
on or before the 1st day of March and September of each
year, and $1.70, to be contributed to the benefit fund at
the death of a member whenever the condition of the
benefit fund made it necessary to levy an assessment. By
the certificate Mr. Silvers was made a member of the asso-
ciation, subject to its rules and regulations. The certifi-
cate contained the following:

"Sixty days after satisfactory proof of the death of said
member, and upon the surrender of this certificate, pro-
vided that said member is in good standing at the time of such
death, the Michigan Mutual Benefit Association of Hills-
dale hereby promise and agree to pay, at their office in
the city of Hillsdale, to Josie Silvers (wife), heirs, admin-
istrators, or assigns, a sum not exceeding $3,000."

On the morning of February 17, 1889, the assured was
found at his home, insensible from a pistol-shot wound.
The assured's wife and two children were found dead from
the same cause, and he died the following day. He left

[1] This head-note corrects the head-note to the *mandamus* case,
reported in 84 Mich. 521, as to the class of heirs substituted as
plaintiffs.

no family, no father or mother. His heirs at law consist of three brothers, two sisters, and three children of a deceased brother, who are plaintiffs herein. It is conceded by the defendant that the assured paid all dues and assessments which became due and payable in his lifetime. His wife, Josie, left a will, giving all her property to the assured. Plaintiffs herein sought to draw this fund through the estate and will of Josie. Her administrator with the will annexed made the proofs of death, and presented them to the company, and demanded payment thereon. The company refused to pay, and this suit was brought by such administrator. The suit being wrongfully commenced in the name of the administrator of Josie, this Court, by *mandamus*, ordered that the name of the administrator be stricken out, and the suit left to stand in the names of these plaintiffs, who are the beneficial parties. *Wood v. Circuit Judge*, 84 Mich. 521. The amendment to the declaration was made in the circuit court, and on the trial there the court directed the verdict in favor of the defendant company. The reasons the court gave for such direction are:

1. That the contract between the parties seems to provide that the defendant company was under no obligation to do anything more than to take voluntary assessments, and was then to discharge the policy by paying what that assessment might net, and it might be more or less; that the breach is a failure to make the assessment, rather than to pay any particular sum, and the declaration should have been made upon that theory.

2. That the statute under which the defendant company is organized limits its operations to the raising of benefit funds which shall inure to the benefit of such persons as may be designated who are within the class known as possessing insurable interests on the life of the assured, and the company cannot create liability against itself in favor of any person who is not within this class, whether the attempt to do so is by a direct contract, or whether the liability is sought to be raised by indirection; that the

word "heirs" must be construed as those who are members of the assured's family, or other persons who have an insurable interest; that some of the plaintiffs—that is, the children of the deceased brother—are not of that class.

Plaintiffs bring error. We shall discuss the last question first.

The statute in force at the time the policy was issued, and under which the defendant company was organized, was passed in 1869.[1] By the first section of this act it is provided that any number of persons, not less than five, may become a body corporate and politic for the purpose of securing to the families or heirs of any member, upon his death, a certain sum of money, to be paid by such corporation either out of its fund, or by an assessment made upon the members of such corporation, or upon the members of the class in such corporation to which such deceased member belonged, etc. It is provided by the act that, upon the execution and filing of the articles of association, the signers thereof, and those who may thereafter become associated with them, shall become a body politic and corporate for the purposes therein set forth. The act provides for the election of not less than five nor more than twenty trustees, who are empowered to adopt by-laws, with power to change them at pleasure, except so far as they relate to the right of the corporation to assess its members, or the members of a particular class; and except, also, so far as said by-laws affect the rights and benefits belonging to or to be derived by the members. The articles of association are to contain:

1. The names of the persons associating in the first instance.
2. The name of the corporation, etc.
3. The objects of the corporation, the number of classes in such corporation, and the object of the division, etc.
4. The number of trustees, etc.

[1] See Act No. 104, Laws of 1869 (How. Stat. §§ 3949–3955).

5.  The terms and conditions of membership therein

This act was amended by the Legislature in 1879, and several new sections added;[1] but this amendment in no wise affects the question here involved.

The contract was made with the assured.  He paid in full all his assessments, and complied fully with all the requirements of the articles of association and the by-laws. He named in the certificate as beneficiary one who had an insurable interest in his life.  He also named his heirs, who could take in case of the death of his wife before he deceased.  This, by the statute and the laws of the company, he could do.  Josie and the children died, so that there was no one to take but these heirs.  Certainly it was not the understanding of the parties that in such a contingency the policy would lapse, or that no person would be *in esse* capable of taking, so that the defendant company, though having taken payments from the assured during all these years, would escape liability altogether. Neither does the statute nor the laws of the company or the contract contemplate any such limitation upon the word "heirs."  The plaintiffs here are the heirs of the member, within the meaning of the statute, and by the express terms of the contract are entitled to have the fund.

The learned circuit judge, in passing upon the question, undoubtedly had in mind the language of the revisory statute, instead of the statute as it then stood.  In the revisory act, passed in 1887, it is provided that no cooperative or mutual benefit association shall issue a policy upon any life in which the beneficiary has not an insurable interest.  Act No. 187, Laws of 1887, § 16 (3 How. Stat. § 3960*d*5).  The court below said of this:

"The statute which furnishes the authority for this com-

---

[1] See Act No. 73, Laws of 1879 (How. Stat. §§ 3956-3960).

pany to do business of this character at all says that they are limited in their operations to the raising of benefit funds which shall inure to the benefit of such persons as may be designated who are within the class known as possessing insurable interests in the life assured."

The statute referred to, and which the trial court evidently had in mind, while passed in June, 1887, did not take effect until September following the time when this contract was made, so that it could not have any effect on the contract, which must be construed under the former act, as that act entered into and became a part of the contract. But we may derive some light from that statute in aid of the legislative interpretation of the former one. If the former statute bears the interpretation given it by the court below, then the amendment in 1887 was unnecessary, as the Legislature by express enactment imported into the statute the very limitation which the court put upon the word "heirs" before the amendment. The statute of 1887 (section 3960*d*5) provides that no policy shall issue upon a life in which the beneficiary named has not an insurable interest; yet by a later clause of the same section it is provided that, while any certificate or policy issued in violation of the above provisions shall be void as to the beneficiary therein named, yet the amount thereof shall, in case of death, be payable to the heirs of the member. It is therefore evident that, even under the statute of 1887, it was not the intent of the Legislature, under the circumstances found to exist in the present case, that the policy should lapse, and the company escape all liability, but that, though void as to the beneficiary, it should be paid to the heirs of the member, whether they were of a class who had insurable interests or not.

But it is claimed by counsel for defendant that this question was settled in favor of defendant's contention by the cases of *Mutual Benefit Ass'n v. Hoyt*, 46 Mich. 473, and *Mich. Mutual Benefit Ass'n v. Rolfe*, 76 Id. 146. In

*Association v. Hoyt, supra,* the beneficiary was neither a member of the family of the assured, within the meaning of the contract, nor an heir. In *Association v. Rolfe, supra,* the certificate was upon the life of Francis M. Lyon, and the beneficiary, Lorey E. Lyon, his wife. The certificate, like the one in the present case, named "Lorey E. Lyon (wife), heirs, administrators, or assigns." The wife died before the assured, leaving no children. After the death of the assured, who left no children, letters of administration were issued to Ransom D. Lyon, the father of the assured. Francis M. Lyon, after the death of his wife, sold and transferred the certificate to Simeon N. Rolfe, his brother-in-law. Rolfe thereafter paid all assessments up to the death of the assured. This was the only consideration. A bill of interpleader was filed by the company to determine to whom the moneys were due and payable,—whether to the heirs at law of the assured, who were represented by the administrator of his estate, or to Simeon N. Rolfe and others, who were heirs at law of the .wife. Simeon N. Rolfe was . not a member of the family of the assured, nor an heir at law. He was the brother of the wife of the assured. He, as well as all the heirs at law of Lorey E. Lyon, were made parties defendant to the bill. It was said by this Court that it was not the intent of the law to secure to the heirs of the beneficiary who is not a member the payment of a sum of money; so that, unless the heirs of the beneficiary are at the same time the heirs of the member, the law would not embrace them in its purpose. It was further said:

"There being no beneficiary named in the certificate qualified to take, and having no family, the money is payable to his heirs [that is, the heirs of the assured]. In this case his father, Ransom D. Lyon, is such heir."

. Thus it was held that the father was, as heir at law of the assured, entitled to recover the moneys. The ques-

tion, therefore, whether the heir at law had an insurable interest in the life of the assured, was not involved in that case.

Niblack on Mutual Benefit Societies (section 253), in considering the construction to be placed upon the word " heirs," says:

" Where a member of a mutual benefit society has designated his ' legal heirs' as his beneficiaries, the presumption would clearly be that he intended those to whom the law would give his property, he dying intestate; and hence it is the actual capacity of inheritance at the time of the death of the owner of the property * * * that determines who is an heir of a decedent;" citing *Gauch v. Insurance Co.*, 88 Ill. 251; *Elsey v. Association*, 142 Mass. 224 (7 N. E. Rep. 844).

Again, in section 257 of his work, he says:

" For the purpose of ascertaining the persons who are the beneficiaries under a designation of ' my heirs,' etc., it is necessary to consult the statutes of the state casting the descent of the property of an intestate. * * * When a member has made his certificate payable to his ' heirs' they do not take the fund by descent, but by contract. The statutes of descent and distribution cease to be of use, therefore, at the very moment when the heirs at law of the intestate have been found according to their provisions." *Wilburn v. Wilburn*, 83 Ind. 55.

The same rules of construction should be applied to dispositions of property created by these mutual benefit associations as are applied to bequests by will. *Union Mut. Ass'n v. Montgomery*, 70 Mich. 595.

The court below was also of the opinion that the declaration did not make a case to recover what was sought to be recovered. The declaration counts upon a sum of money due the plaintiffs, not exceeding $3,000; setting forth the provision of the certificate that, if one assessment in accordance with the by-laws, rules, and regulations of said association upon all the members in good standing at the time of the death of the assured shall be less than the

sum named in said certificate, then said amount shall be received in full of all demands against said association, or any individual member of said association, on account of said contract of insurance.    The declaration further alleges the performance of the contract upon the part of the assured, and that the defendant became liable to pay, and, being so liable, promised to pay, said sum as aforesaid; but has wholly failed so to do, and wholly refused to make any assessment therefor.    It is evident that the declaration proceeds upon the theory that the defendant denied all liability, and this fact fully appeared upon the trial; so that the question is presented whether it became necessary to the plaintiffs' case to rely solely upon the right to demand that an assessment be made, or whether they might, from the claim made by the declaration and proofs, have their judgment against the defendant for the amount claimed, inasmuch as it was disclosed by the proof that there were members enough in good standing against whom assessments might be made to more than meet the amount of the claim made by the plaintiffs under this certificate.

In *Jackson v. Association*, 73 Wis. 507 (41 N. W. Rep. 708), the complaint was that the defendant denied all liability under the policy, and refused to levy any assessment upon the members of the association; and that 80 per cent. of the assessment would have amounted to at least the sum named in the policy.    The complaint was demurred to, and the demurrer sustained in the court below.    It is said by Mr. Justice Cassoday, speaking for the supreme court, to which an appeal was taken:

"There are certainly authorities to the effect that a bill in equity may be maintained to enforce payment of such certificates by compelling a specific performance of similar contracts through assessments, as stipulated.    *    *    * The decided weight of authority, however, seems to be to the effect that an action at law to recover damages may be maintained upon such contract for a refusal or neglect

to make such assessment;" citing a long line of authorities, among which are: *Earnshaw v. Society,* 68 Md. 465 (12 Atl. Rep. 884); *Suppiger v. Association,* 20 Ill. App. 595; *Neskern v. Association,* 30 Minn. 406 (15 N. W. Rep. 683); *Burland v. Association,* 47 Mich. 424 (11 N. W. Rep. 269); Bac. Ben. Soc. § 453.

The learned justice further said:

" The principal difference in these two classes of adjudications turns upon the question whether such recovery for such breach of contract is limited to mere nominal damages, or extends to substantial damages. * * * We agree with that class of cases which hold, in effect, that for a substantial breach of such contract the beneficiary may recover substantial damages in an action at law. As indicated in *Earnshaw v. Society,* 68 Md. 465, there may be some difficulty as to the true measure of damages, and the enforcement of the judgment in case of recovery. So there may be difficulty in obtaining the requisite proof to establish the plaintiff's claim. But these considerations are not before us on this demurrer. * * * * *

" Under the contract in question the plaintiff was entitled, upon the death of his wife, to 80 per cent. of an assessment to be thereupon levied and collected therefor, not exceeding $4,000, less any payment, etc. Upon such death it became the duty of the defendant, under the contract, to make such levy and collection. According to the allegations of the complaint, it not only neglected and refused to do so, but denied all liability. It is also alleged in effect, and of course admitted by the demurrer, that 80 per cent. of such assessment 'would have amounted to at least $4,000.' With this confession before us, we cannot hold as a matter of law that the plaintiff has only sustained nominal damages by reason of such breach, merely because there may be a total or partial failure of proof, or that it may be difficult, in advance of such levy and attempted collection of such assessment, to ascertain the precise amount of damages which the plaintiff may be entitled to recover. Several of the authorities cited sustain these views. The breach of an agreement to make such levy and collection of such assessment seems to be somewhat similar to the breach of an agreement to insure, upon which actions at law have frequently been sustained."

So, in the present case, these heirs of Frank L. Silvers

were entitled, upon his death, to have the amount of the $3,000 paid them if the assessment—which it was the clear duty of the defendant to make —should produce that amount. Instead of making payment, defendant not only refused it, but, denying all liability, refused to make an assessment for the purpose of paying it. It is clear from the testimony appearing in the record that an assessment would produce more than the amount necessary to meet the full amount of the certificate. We think the allegations in the declaration were sufficient to enable the plaintiffs to recover. The defendant cannot be heard to say, if the averments in the declaration are true, that it denies all liability, and contests the case on that ground, and, when liability is established, then claim it has no funds to pay with, when the fact appears that, if it had made an assessment, a sufficient amount would have been on hand to meet the judgment recovered. It was its duty to make it, and its fault if the funds are not on hand to pay the judgment.

The judgment of the court below must be set aside, with costs, and a new trial ordered.

The other Justices concurred.