## WACO MUT. LIFE & ACCIDENT ASS'N et al. v. ALFORD. (No. 417.)*

(Court of Civil Appeals of Texas. Waco. Nov. 18, 1926. Rehearing Denied Dec. 23, 1926.)

1. **Appeal and error ⬤➡218(2)—Where no objection was made, to failure to submit issue as to whether applicant made false statements, insurer cannot complain.**

In suit on accident certificate, insurer, not objecting to court's charge for failure to submit issue as to whether applicant suffered infirmity and made false statements thereon at time of application, cannot complain.

2. **Appeal and error ⬤➡930(3)—Where evidence would authorize submission of issue of misrepresentation in application, trial court presumably found against insured (Vernon's Ann. Civ. St. 1925, art. 2189).**

Evidence being sufficient to authorize submission of special issue as to misrepresentation in application, it will be presumed, in support of judgment in action on accident certificate, that trial court found against insurer in view of Vernon's Ann. Civ. St. 1925, art. 2189.

3. **Insurance ⬤➡256(2)—Untrue statements to defeat recovery must be made with fraudulent intent.**

For untrue statements in application for life and accident insurance to defeat recovery on certificate, they must be made with fraudulent intent.

4. **Appeal and error ⬤➡930(3)—Where issue as to time insured became disabled was not submitted, it is presumed 'disability occurred before insured reached age of 65 in accord with judgment.**

In suit on accident insurance certificate, where issue as to time insured became totally and permanently disabled was not submitted nor requested to be submitted, it will be presumed that court found that disability occurred before insured became 65 years of age in accordance with judgment.

5. **Insurance ⬤➡668(3)—Evidence held sufficient to raise issue as to whether constitution contained provision limiting liability at time certificate issued.**

Where insured became totally disabled within 12 months of date of certificate, evidence *held* to raise issue as to whether provision limiting liability until insured had been subscriber for 12 months was in constitution and by-laws at time certificate issued.

6. **Trial ⬤➡121(1)—Reference in argument to different kind of paper on which by-laws were written held not improper.**

Where by-laws of association were before jury when witnesses were questioned about sheet being torn out and another pasted in and edges of sheets were ragged, statement of plaintiff's counsel, calling jury's attention to ragged condition of by-laws and different kind of paper on which pages were written, *held* not improper.

7. **Trial ⬤➡125(1)—Argument before jury that manager of association wanted only application fee, and did not care what subscribers got, held not inflammatory.**

In action against association on accident certificate, counsel's statement to jury that associations of defendant's kind wanted only the application fee, and did not care what subscribers to policies got, *held* not inflammatory or harmful.

8. **Trial ⬤➡133(1)—Whether argument exceeds bounds of propriety is question addressed to discretion.**

Whether argument exceeds bounds of propriety to prejudice and injury is question addressed to trial judge's discretion.

9. **Insurance ⬤➡672—Where promise to pay $1 for each member in good standing was unconditional, judgment for fixed sum against association was proper.**

Where association unconditionally promised to pay $1 for each member in good standing at time total permanent disability occurred to member, and only thing necessary in determining liability was to determine number of members in good standing, judgment against association and officers for fixed sum in money *held* proper.

10. **Insurance ⬤➡56—Members of association, by using funds for payment of other claim than that of plaintiff, became personally liable.**

Where association had funds with which to pay claim of totally disabled certificate holder, but used funds in payment of other claims filed later, directors thereby became personally liable.

11. **Insurance ⬤➡191—Awarding mandatory injunction requiring assessment to be made by mutual accident association held proper.**

Awarding mandatory injunction requiring directors of mutual accident association to assess each member of association in good standing assessment of $1 *held* proper, in view of certificate and facts.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Suit by N. J. Alford against the Waco Mutual Life & Accident Association and others. From a judgment for plaintiff, defendants appeal. Reformed, and, as reformed, affirmed.

Bryan & Maxwell, of Waco, for appellants.
Weatherby & Rogers and Barney Garrett, all of Waco, for appellee.

STANFORD, J. Suit by N. J. Alford upon a life and accident insurance certificate issued by the Waco Mutual Life & Accident Association, alleging that defendants Joe H. Bradley, Mrs. Joe H. Bradley, Jesse Jones, and H. C. Coleman were partners doing business under the name of Waco Mutual Life & Accident Association, and that they as such partners in such name were engaged in writ-

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction February 16, 1927.

ing life and accident insurance upon the assessment plan. It was also alleged in the alternative that the defendant Waco Mutual Life & Accident Association was an unincorporated local mutual aid insurance association, writing life and accident insurance upon the assessment plan, and that Mrs. Joe H. Bradley was its secretary and Joe H. Bradley, Jesse Jones, and H. C. Coleman were officers of said company, and judgment was sought against said company and said officers.

It was further alleged that on August 20, 1923, defendants issued to plaintiff a certificate of insurance, which provided they would pay plaintiff an assessment of $1 for each member, not to exceed $1,000, if before attaining the age of 65 years he should become permanently and totally disabled from engaging in any work, or from conducting any business for compensation or profit; that they would pay an assessment of 50 cents from each member, not to exceed $500, if plaintiff suffered the loss of an eye; whereby defendants became bound to pay to plaintiff said sum or sums upon the happening of the contingencies as above set out; that about the year 1902 plaintiff lost the sight of his left eye; that at the time said policy was issued to him he had only the sight of his right eye, all of which was well known to defendants; that on about the 1st day of September, 1923, the sight of his right eye became so greatly impaired that he was compelled to refrain from any further work or labor of any kind, and by reason thereof defendants became liable and bound to make levy and collect an assessment of $1 from each member in said order and pay same to him, not to exceed $1,000; that on or about November 1, 1924, plaintiff lost completely the sight of his right eye, and thereby became permanently and totally blind and permanently and totally disabled from doing any kind of work, by reason of which defendants became liable to make levy and collect and pay to him 50 cents for each member to the amount of $500; that there were more than 1,000 members in said order, and that each member was able and willing to pay such assessment; that defendant had on deposit one assessment more than sufficient to pay plaintiff's claim, but that defendants diverted said money on hand to other parties and refused to make an assessment to pay plaintiff's claim, by reason of which defendants became liable jointly and severally to plaintiff in the sum of $1,000, or in the alternative for $500 for the loss of his right eye; that prior to the time plaintiff became 65 years of age he became totally and permanently disabled from pursuing any gainful occupation, by reason of which defendants became bound and obligated to pay him the sum of $1,000 in said policy provided for; that he made proof of loss, etc., as required by defendants, but that said defendants refused to pay, etc.

After general demurrer, special exceptions,

failure to make proof of loss, etc., the defendants alleged that said certificate provided that liability for total disability ceased when the holder reached the age of 65 years, and that plaintiff's total disability, if any, occurred after he had reached the age of 65 years; also that when plaintiff made application for said certificate he stated in said application that he had no disease or injury from which he had not fully recovered, and that such statements were untrue, etc.; also that under the by-laws, which were a part of the insurance contract, no liability for total disability could accrue until after one year from the date of said certificate, and that plaintiff's disability accrued before the expiration of a year from the date of the certificate, etc.

The case was submitted to a jury on special issues, which the jury answered as follows:

(1) That N. J. Alford did become permanently and totally disabled from engaging in any gainful occupation or from performing any work or conducting any business for compensation or profit.

(2) That such total and permanent disability occurred to the plaintiff before he attained the age of 65 years.

(3) That such total and permanent disability occurred after the 20th day of August, 1923, the date upon which the policy introduced in evidence herein was issued.

(4) That the plaintiff, N. J. Alford, did suffer a total loss of his right eye.

(5) That such loss occurred after the 20th day of August, 1923, the date upon which the policy in this case was issued.

(6) That neither the constitution nor by-laws on August 20, 1923, the date upon which the policy introduced in evidence was issued, contained a provision as follows: "Provided, however, that no total disability claim shall be allowed until the claimant has been a subscriber hereto for a period of twelve months."

(7) That such total disability was caused by defects in plaintiff's eyes which existed prior to August 20, 1923.

(8) That the loss of the right eye of plaintiff was caused by defects therein that existed prior to August 20, 1923.

On said findings and such other findings by him as the evidence authorized, the court entered judgment for appellee for $863.

[1-3] Under appellants'. first, ninth, and tenth assignments they contend that appellee is not entitled to recover because in the application the applicant stated he was not suffering from any injury or infirmity from which he had not fully recovered, while the evidence shows that he was suffering from an injury or defect in his right eye at the time he filed his application. Appellants pleaded these alleged false statements in the application as a defense. Appellee, in reply, denied making any false statements in the applica-

tion, and, further, that if the application contained any such statements said statements were put in the application without his knowledge or consent; that one Lewis, the agent of appellants, wrote the application, and no question was asked him as to whether or not he was suffering from any injury or infirmity from which he had not recovered; and that he had no knowledge that any answer to such a question was put in the application by appellants' agent. This issue was made by the pleadings. The evidence is sufficient to show that Lewis, appellants' agent, wrote the application; that Mrs. Alford at the time told the agent that Mr. Alford's left eye was out. The agent Lewis could not help observing this fact. Mrs. Alford also testified that said agent did not ask Mr. Alford if he had any injury or disease from which he had not fully recovered, and that said agent signed Mr. Alford's name to said application, and that appellee did not know that said application contained said alleged false statement. The court did not submit this issue to the jury, and neither side requested its submission, and no objection was made to the court's charge for failure to submit said issue. So this being true, appellants are in no position to complain of the court's failure to submit such issue, and the evidence being sufficient to authorize such finding, it will be presumed that the trial court found against appellants on this issue and in support of the judgment. Article 2189, Vernon's Sayles' 1925 Statutes. In fact the certificate sued upon provides:

"And it is also agreed that, if any untrue statement or statements have been made with fraudulent intent in the application as to age, health, family history, or any other question that would materially increase the risk assumed, this certificate becomes void and of no effect."

So in any event, if there were untrue statements in appellee's application, in order for such statements to defeat a recovery they must have been made with fraudulent intent, and there is no evidence or circumstance tending to show such statements, if any, were so made. We overrule these assignments.

[4] Under appellants' third assignment they contend that appellee was not entitled to recover because he had attained the age of 65 years before he became totally and permanently disabled. The certificate sued on provides:

"Fourth. Should any member in good standing totally lose an eye, hand, or foot, the holder hereof further agrees to pay an assessment of sixty cents (60¢); and should any member become totally and permanently disabled from engaging in any gainful occupation, prior to attaining the age of sixty-five, the holder agrees to pay $1.20. The association further agrees to pay fifty cents (50¢) from each member that is in good standing not exceeding five hundred ($500.00) dollars, for a permanent injury and total loss of an eye, hand, or foot, if said hand or foot be severed at or above the wrist or ankle. Should a member become totally and permanently disabled from engaging in any gainful occupation, or from performing any work or conducting any business for compensation or profit, prior to attaining the age of sixty-five, the association agrees to pay $1.00 from each member in good standing," etc.

It will be observed from the above provision that there is no age limitation attached to the right to recover not to exceed $500 for the loss of an eye, hand, or foot; but to recover not to exceed $1,000 for permanent total disability, such disability must occur prior to the assured's reaching the age of 65. Appellee had lost his left eye prior to the issuance of said certificate to him, of which fact appellants knew. He lost the sight of his right eye after said certificate was issued and the loss of said right eye rendered him totally and permanently disabled. If the loss of his right eye, resulting in total disability, occurred before he attained the age of 65, then, we think, he was entitled to not exceeding $1,000 as for total disability, but if such loss occurred after he became 65, then he would be entitled to claim as for the loss of an eye. Appellee testified he was born October 22, 1858, so he became 65 on October 21, 1923. Appellant testified, in part, as follows:

"My occupation has been farming for the last 5 years. * * * I lost the sight of my left eye 15 or 18 years ago; that has been out 15 or 18 years, but the other one has been good, though. The condition of my right eye became such that I could not farm along in the fall of 1923, I think. I noticed that I couldn't get along very well; I was trying to help the children pick some cotton, and I couldn't do that, so I would have to leave it; I would have to abandon the job. That was along in the middle of the fall of 1923, some time in October, maybe, or the latter part of September: it was along in early cotton picking time, and all along during the fall. Up to that time I could and did engage in farming; I helped the boys on the farm all the time up until then. Since that time, however, I have not been able to do anything."

Mrs. Alford, the wife of appellee, testified, in part, as follows:

"With reference to the sight of his right eye, and when it began to fail so that he couldn't pursue his work, I will state that it commenced along in September and October, or along about that time, to get bad. I don't remember just exactly when it was,' but I noticed it was failing and commenced to fail along about the last of September, and along about after the 1st of September, 1923, it got to where Mr. Alford couldn't do nothing; he didn't do anything at all, and he hasn't worked since that time."

The issue as to the time when appellee lost the sight of his right eye to the extent he could not work, and thereby became totally and permanently disabled, was not submitted to the jury nor requested by appellants to be submitted. This being true, and there being evidence in the record to author-

ize such finding, it will be presumed the trial court found on said issue in support of the judgment; that is, that said loss and resulting disability occurred prior to October 21, 1923, before appellee became 65 years of age. These assignments are overruled.

[5] Under other assignments appellants contend that the constitution and by-laws of the association contained a provision on August 20, 1923, the date the certificate was issued, as follows:

"Provided, however, that no total disability claim shall be allowed until the claimant has been a subscriber hereto for a period of twelve months,"

—and that the court erred in submitting to the jury the issue as to whether said provision was in the by-laws or constitution on August 20, 1923, and that the finding of the jury on this issue in the negative is without evidence to support it. It is true the constitution and by-laws of said association were by the terms of the certificate sued upon made a part of the contract, and if said constitution and by-laws contained the provision referred to on August 20, 1923, then appellee was not entitled to recover for total and permanent disability, but would have to rely upon his right, if any, to recover for the loss of an eye; the evidence showing the loss of the eye and the resultant disability occurred prior to the expiration of 12 months after the date of the certificate. The issue as to whether the constitution and by-laws contained said provision on August 20, 1923, the date said certificate was issued, was made by the pleadings and submitted to the jury, and the jury found said provision was not so contained in the constitution and by-laws on August 20, 1923. So the only question here involved is, Was there evidence to support such finding? The material part of the by-laws is as follows:

"Article 5. When a member dies, or becomes totally and permanently disabled after the certificate has been issued, the beneficiary of said member shall be paid one dollar for each member in good standing in the class or classes to which he or she belongs, upon the receipt of due proof of death of said member, or will pay the same sum to the said member, upon due proof of three medical doctors, * * * provided, however, that no total disability claim shall be allowed until the claimant has been a subscriber hereto for a' period of twelve months."

The evidence shows that the constitution and by-laws were written with a typewriter on letter size paper, and that the second page, containing article 5, had been removed, and said article typewritten on a larger size paper and pasted in as page 2. Jesse Jones, on cross-examination, testified as follows:

"I couldn't tell you the exact date on which I saw this page (page 2) that you exhibit to me in the constitution and by-laws; but it was along in the fall of 1924 some time. I don't know how it came to be there or who put it there, and I couldn't say whether it was in there before then or not. That is the first time that I ever saw it in there, anyway. I don't know who wrote that page of the constitution and by-laws and put it in there like it is. I am the general manager of the concern, but I can't tell how this page got into the constitution. * * * I don't say this page wasn't inserted in there after the rest of the constitution was written; it could have been for all I know, but when I looked the first time, it was in there. This handwriting on the second page of this constitution, written in ink, looks like my handwriting. I don't remember when I put that in there. * * * I reckon it must have been after the 1st of January of this year. * * * I wrote those words in there myself. The words that I wrote in are, 'three medical doctors,' following the words, 'upon due proof.' "

Mr. John Gantt, an attorney of the Waco bar, testified that he was employed by Mrs. Bradley to revise the constitution and by-laws during the year 1925, and said:

"At that time I couldn't say whether this second page was in the constitution and by-laws or not."

Mrs. Joe Bradley testified:

"I have already testified that this second sheet was in this constitution and by-laws when I first went in as secretary in April, 1923; it was in there when I first became secretary. This interpolation here in ink, 'three medical doctors,' was inserted in there along in January. There wasn't any occasion for putting it in there, only we just thought it ought to be there. That was put in there in January of 1925."

Considering the fact that the second sheet of the constitution and by-laws had been removed and another sheet containing the provision in question inserted in its place, with no explanation as to who did this or when it was done; considering also the evidence of the general manager that he did not know said provision was in the constitution and by-laws until 1924; considering also that said documents were amended in 1925, not by a vote of the board of directors, as required by law, but simply by the general manager, Jones, writing a clause in said documents; and considering the loose way in which said instruments were handled and amended from time to time, and in view of all the circumstances, we think the evidence was sufficient to raise the issue as to whether said clause in question was in the constitution and by-laws on August 20, 1923, the date when appellee's certificate was issued, and that the trial court was correct in submitting said issue to the jury, and that the finding of the jury on such issue is supported by evidence. We overrule this assignment.

[6] Under other assignments appellants complain of improper argument by appellee's counsel. The record discloses that, while appellee's counsel was discussing the issue as

to whether the constitution and by-laws on August 20, 1923, contained the provision to the effect that no total disability claim shall be allowed until the claimant has been a subscriber for a period of 12 months, he took in hand the constitution and by-laws and waved them before the jury, and said:

"See the ragged condition of these by-laws; see the different kinds of paper upon which pages 1 and 2 are written; see the different kinds of type used in typing pages 1 and 2."

And, again, counsel pointed to one of the defendants, Jesse Jones, and said:

"Concerns of this kind (meaning defendant association) that Jesse Jones is manager of, all they want, all he wants, is the $5 application fee that he gets, and he does not care, and they do not care, what the subscriber to the policy gets."

[7, 8] While the by-laws were not introduced in evidence, they were before the jury when witnesses were questioned about a sheet being torn out and another pasted in, and the edges of the sheets being ragged, etc. All the witnesses admitted the inserted sheet was different paper, and the type on sheets 1 and 2 was compared in the presence of the jury. That the edges of the paper were ragged was referred to in the examination of witnesses. Therefore counsel was not out of the record. The remaining statements of counsel to the effect that all they want is the $5 application fee, and they do not care what the subsciber gets, were not strictly proper argument, but it was not the statement of evidence or the argument of some fact outside the record, but was in the nature of a conclusion or deduction of counsel, and we do not think it was inflammatory or harmful to the extent as to require a reversal. That the application fee was $5 was proven. The jury was bound to know such argument was only a conclusion of counsel. The trial court was in a better position to determine whether said argument was harmful than this court. Whether or not the argument exceeded the bounds of propriety to the prejudice and injury of appellants was a question addressed to the sound discretion of the trial judge, and as he has overruled appellants' contention on this point, we cannot say—in fact, we do not believe—that he abused his discretion in this respect. Texas Midland R. R. Co. v. Wiggins (Tex. Civ. App.) 161 S. W. 445; Glover v. Pfeuffer (Tex. Civ. App.) 163 S. W. 984; Nimitz v. Holland (Tex. Civ. App.) 217 S. W. 244; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185; Bowles v. Bryan et al. (Tex. Civ. App.) 277 S. W. 760. We overrule this assignment.

[9] Under other assignments appellants contend that appellee was not entitled to a judgment against the Waco Mutual Life & Accident Association, nor the officers thereof, for a fixed sum in money, unless it is clearly shown that the association had the money in its possession which rightfully belonged to appellee, and, under other assignments, appellants contend that appellee was not entitled to a judgment for a mandatory injunction compelling the officers to levy and collect from the members a sufficient amount to pay said judgment. The part of the certificate sued upon applicable to the question here involved is as follows:

"Should a member become totally and permanently disabled from engaging in any gainful occupation, or from performing any work or conducting any business for compensation or profit, prior to attaining the age of sixty-five, the association agrees to pay one ($1.00) dollar from each member in good standing upon surrender of this certificate, which will become void and of no further effect."

This is an unconditional promise on the part of the association to pay $1 for each member in good standing at the time the total permanent disability occurs, and the amount promised to be paid is not, like the policies of some other associations, dependent upon the amount realized by one assessment. The only thing necessary, in this case, in determining the amount for which appellant association was liable, was to determine the number of members in good standing at the time appellee's claim for total disability accrued, and this was determined by appellants' records to be 863, so the trial court properly rendered judgment against the association for $863.

[10] The record discloses that the association kept an assessment on hand, and that it had the funds on hand with which it could have paid appellee's claim, but the officers of said association decided there was no liability to appellee, so said funds were paid to others. The directors of the association, having used the funds on hand which should have been used to pay appellee's claim, in the payment of other claims filed later rendered themselves personally liable. Home Benefit Ass'n v. Wester (Tex. Civ. App.) 146 S. W. 1022. So judgment was properly rendered against the association and directors thereof jointly and severally. If the contract sued upon had provided, as claimed by appellants it does, that appellee was only entitled to the amount realized from one assessment; then, as it would have been the duty of the directors to make such assessment, and if they failed and refused to perform said duty, in a suit against said association and its directors for the full amount of said certificate, they would have been jointly and severally liable for said full amount, unless they showed by pleading and evidence that, if they had made an assessment, the full amount would not have been realized. Supreme Council, etc. v. Mamie Anderson, 61 Tex. 296; International Order, etc., of Tabor v. Boswell et al. (Tex. Civ. App.) 48 S. W. 1108; Merchants' Insurance Co. v. Arnold et al. (Tex. Civ. App.) 32 S. W. 579; Covenant

Mutual Life Ass'n v. Kentner, 188 Ill. 431, 58 N. E. 966; Supreme Lodge K. of P. v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409; Thornburg v. Farmers' Life Ass'n, 122 Iowa, 260, 98 N. W. 105; Union Mutual v. Frohard, 134 Ill. 228, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664; Silvers v. Michigan Mutual Ben. Ass'n, 94 Mich. 39, 53 N. W. 935; Fort Worth Mutual Ass'n v. Golden, 287 S. W. 291, by this court. There was no error in the amount of the judgment rendered, nor in its being rendered for a certain amount, nor in its being rendered against appellants jointly and severally.

[11] The court was also correct in awarding a mandatory injunction requiring an assessment to be made, but was erroneous in requiring a sufficient amount to be collected by said assessment to satisfy said judgment. The trial court should by said mandatory injunction have required the officers and directors of said association to levy and collect an assessment of $1 from each member in good standing, and that the proceeds of such assessment be applied to the payment of this judgment and court costs, and that execution issue against all said defendants for any balance, if any. We sustain appellants' fifteenth assignment to the extent above indicated, but in other respects overrule same, and we hereby reform the judgment of the trial court and direct that by the mandatory injunction directed to be issued by the trial court, the officers and directors of appellant make and collect an assessment from all members and apply same to the payment of this judgment and court costs, and, if the proceeds of said assessment are insufficient to satisfy said judgment, then that execution issue for any balance.

We have considered all of appellants' assignments, and, finding no reversible error, the judgment of the trial court as reformed is hereby affirmed.