KANSAS CITY, M. & O. RY. CO. et al. v.
BLACKSTONE & SLAUGHTER.
(No. 6119.)

(Court of Civil Appeals of Texas. Austin.
Nov. 5, 1919. Rehearing Denied
Dec. 24, 1919.)

1. APPEAL AND ERROR ⚖➡1001(1) — VERDICT MUST BE SUSTAINED IF POSSIBLE.

If the verdict can be sustained by legal evidence as to any act of negligence on the part of defendant carrier, it is the duty of the Court of Civil Appeals to do so.

2. CARRIERS ⚖➡228(5)—DELAY TO SHIPMENT OF LIVE STOCK CAUSED BY NEGLIGENCE.

In an action against a railroad for damage to a shipment of sheep by delay, evidence held to support the jury's answer to a special issue that the sheep sustained damage as the proximate result of delays which defendant railroad or its connecting carriers could have avoided by ordinary care, the evidence not showing delay was due to unprecedented floods, that is, an act of God.

3. CARRIERS ⚖➡228(1)—NEGLIGENCE PRESUMED FROM WRECK DELAYING LIVE STOCK.

In action for damage to sheep by reason of delays, evidence that a wreck occurred on track ahead of sheep train made a prima facie case of negligence under doctrine of res ipsa loquitur.

4. CARRIERS ⚖➡228(5)—EVIDENCE SUFFICIENT THAT DELAY OF LIVE STOCK WAS NOT BY ACT OF GOD.

In action against carrier for delay and damage to shipment of sheep, where carrier contended that delay was due to bridges damaged by unprecedented floods, evidence that after other floods as great, damaging bridges in like manner, carrier had replaced them as they had theretofore been instead of changing them, would warrant a finding that delay was due not to act of God, but to negligence in construction of bridges.

5. CARRIERS ⚖➡215(1)—NEGLIGENT CARRIER NOT RELIEVED BY ACT OF GOD OF LIABILITY FOR DAMAGE TO LIVE STOCK.

Where shipment of sheep was delayed by wreck and washout of three bridges, the fact that the wreck and washout of one bridge were inevitable accidents does not relieve the carrier of liability where the wreck was cleared in time for the train to have crossed the bridge before washout had it not been for negligent construction of the other two bridges.

6. CARRIERS ⚖➡230(8) — SPECIAL ISSUE NOT ASSUMING DELAYS WERE CAUSED BY NEGLIGENCE IN CARRYING LIVE STOCK.

In an action against a railroad for damage to a shipment of sheep by delay, in view of the charge as a whole, special issue whether the sheep sustained damage as a proximate result of delays in transportation, which defendant railroad or any of its connecting carriers could have avoided by ordinary care, held not erroneous as assuming delays were caused by defendant's negligence.

7. CARRIERS ⚖➡215(1)—CARRIER LIABLE FOR DAMAGE TO STOCK CAUSED BOTH BY NEGLIGENCE AND ACT OF GOD.

If the negligence of a railroad carrying live stock concurred with an act of God in causing floods as a proximate cause of injury to the stock by delay, and the injury would not have occurred without the negligence of the railroad, the road was liable in damages to the shippers.

8. APPEAL AND ERROR ⚖➡1062(1)—COMBINATION OF TWO MATTERS IN SINGLE ISSUE NOT REVERSIBLE ERROR WHERE ONE IS SUSTAINED BY UNDISPUTED EVIDENCE.

Though Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, contemplates that each issue of fact be submitted separately, where two matters of fact are combined in one issue submitted to the jury, and one of them is not in reality an issue of fact, on account of the undisputed testimony thereon, there is no reversible error.

9. CARRIERS ⚖➡228(5)—EVIDENCE OF NEGLIGENCE SUFFICIENT.

Evidence held sufficient to warrant finding that damage to sheep from being kept in muddy pens was due to carrier's negligence.

10. CARRIERS ⚖➡228(3)—DEPOSITION ADMISSIBLE IN ACTION FOR DAMAGES TO LIVE STOCK.

In an action against a railroad for damage to a shipment of sheep through delay, the deposition of the salesman who sold the sheep, as to their weight and the price for which they were sold, held admissible.

11. APPEAL AND ERROR ⚖➡1068(5)—REFUSAL OF SPECIAL CHARGE HARMLESS IN VIEW OF VERDICT.

In an action for damage to a shipment of sheep through delay, where the jury could not have found for defendants, the railroad and its connecting lines, under a requested special charge, unless they had found the delay was not due to the negligence of the railroad, and in answer to a special issue they found to the contrary, any error in refusing to defendant the requested special charge was harmless to it.

12. APPEAL AND ERROR ⚖➡1064(1)—CHARGE ON BURDEN OF PROOF HARMLESS IN VIEW OF THE EVIDENCE.

In an action for damages to a shipment of sheep through delay, where the undisputed evidence showed that the negligence of the railroad concurred with an act of God in producing the delay, any error in charging that the

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

burden was on the road to show its negligence did not concur was harmless.

Error from District Court, Tom Green County; C. E. Dubois, Judge.

Action by Blackstone & Slaughter against the Kansas City, Mexico & Orient Railway Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

H. S. Garrett, of San Angelo, for plaintiffs in error.

Blanks, Collins & Jackson, of San Angelo, for defendants in error.

## Findings of Fact.

JENKINS, J. On June 2, 1915, defendants in error shipped sheep from Barnhart, Tex., on a through bill of lading, to Kansas City, Mo., over the lines of appellant and its connecting carriers.

It was contemplated that these sheep would be unloaded and fed at Fairview, Okl. They were, however, unloaded June 3, at 6:55 p. m. at Altus, Okl., before reaching Fairview. This was due to the fact that a wreck had occurred north of Altus at about the time the sheep arrived at Altus, rendering it impossible to proceed until such wreck was cleared, which was not done until about 9 or 10 a. m. next day. By this time the approach to the bridge over the Cimarron river had been washed away. The Cimarron, the Salt Fork, and the North Canadian are streams between Altus and Fairview, which is north of Altus.

The bridge over the Cimarron was repaired by 3 p. m. June 5th. At 4:45 the dispatcher's office was advised that the bridge over the Salt Fork had become impassable by reason of high water in that stream. This bridge was repaired by 7:10 a. m., June 7th. Before that, however, to wit on June 6th at 4:50 p. m. the bridge across the North Canadian had been wrecked by high water. This bridge was repaired by 1:45 a. m., June 9th. The sheep left Altus at 10:30 a. m. that day.

There was no delay between Barnhart and Altus. The delay at Altus was rendered necessary by reason of the wreck and the injury to the bridges as stated.

The defendants in error alleged damage by reason of the negligence of plaintiff in error and its connecting carriers in two respects, viz. in the delay, and in keeping the sheep in muddy pens at Altus.

The case was submitted to the jury upon three special issues, as follows:

(1) "Did the plaintiffs' sheep sustain any damage, as direct or proximate result of delays in transportation, which the defendants K. C., M. & O. Ry. Co. of Texas, or any of its connecting carriers in this shipment, could have avoided in the exercise of ordinary care? Answer 'Yes' or 'No.'"

To which the jury answered, "Yes."

(2) "Did the plaintiffs' sheep sustain any damage, as a direct and proximate result of any failure on the part of the defendant K. C., M. & O. Ry. Co. of Texas or its connecting carriers in this shipment to exercise ordinary care to provide and maintain reasonably safe and suitable pens for the feeding, watering, and resting of plaintiffs' sheep at Altus? Answer 'Yes' or 'No.'"

The jury answered, "Yes."

(3) "How much in dollars and cents were said sheep damaged as a direct and proximate result of such damages? Let your answer be in both words and figures."

Answer, "Twelve hundred and fifty-seven and $83/100$ ($1,257.83)."

These findings are sustained by the evidence. Such additional facts as are applicable to the assignments of error will be stated in the opinion herein.

## Opinion.

The defendants in error were the lawful owners of the bill of lading upon which the shipment was made. The plaintiff in error was the initial carrier. These facts necessitate the overruling of the first, second, and third assignments of error.

[1, 2] The fourth assignment is to the effect that the answer of the jury to special issue No. 1 is unsupported by the evidence. This contention is based upon the assumption that the uncontradicted evidence shows that the delay was due to the act of God; that is to say, by unprecedented overflows of the rivers mentioned in our findings of fact. To this we cannot assent:

First. If it be admitted, for the sake of argument, that the overflows in each of the rivers were unprecedented, it does not appear that such overflows were the sole cause of the delay. On the contrary, it is conclusively shown that, but for the wreck between Altus and these rivers, the sheep train would have crossed them before either of the overflows occurred. And so, if the wreck was occasioned by the negligence of the railway company, such negligence was the primary and approximate cause of the delay. The jury did not find, and were not requested to find, what specific act or acts of the defendant caused the delay. The extent of their finding is that some negligent act or acts of the defendant was the proximate cause of the delay. If their verdict can be sustained by legal evidence as to any alleged act of negligence, it is our duty to do so. Hence it becomes material to inquire as to whether the wreck was caused by the negligence of the railway company.

[3] The plaintiff in error proved that the wreck occurred, and in doing so, upon the doctrine of res ipsa loquitur, made a prima facie case of negligence against its connecting carrier, which it was incumbent upon it to meet by showing that the same was not due to the negligence of such carrier. This it

217 S.W.—14

attempted to do by the testimony of the engineer, who said that he examined the engine "before starting on the trip," and saw nothing wrong about it. This witness testfied that the wreck was caused by the absence of a side bearing on the engine. The jury may have concluded that his inspection, if any, was not such as an ordinary prudent engineer would have made, or that he should have inspected the engine after beginning the trip (it was not shown when or where he began the trip), or, he being an interested witness, they may have disbelieved his testimony.

[4] In the second place, if it be conceded, for the sake of argument, that the flood which injured the bridge across the North Canadian was unprecedented, the evidence fails to show that the floods in the Cimarron and the Salt Fork were such. On the contrary, it shows that there had been floods in these streams since the bridges over them were built equally as great, and which had damaged these bridges in the same manner that they were damaged on this occasion, and that, instead of changing them, they put them back as they had theretofore been. This testimony came from plaintiff in error's own witnesses. This would have justified a finding that, so far as these two streams were concerned, the delay was not in any part attributable to the act of God, but wholly to the negligence of the railway company in the construction of its bridges.

[5] The rise in the North Canadian did not occur until 4:45, on June 6th. Even if the wreck was an unavoidable accident, it was cleared by 9 or 10 a. m. on June 4th, at which time the sheep train could have proceeded, and been across the North Canadian two days before the rise in that stream, but for the negligent construction of the bridges across the Cimarron and Salt Fork.

The strongest evidence that the rise in the North Canadian was unprecedented was that of its bridge foreman, who said he had been repairing bridges on this road for 13 years, and that he had never before seen that stream so high. This falls far short of proving that that stream had not been as high as that many times within the memory of the oldest inhabitants.

[6] It is assigned as error that special issue No. 1 assumed that delays were occasioned by the negligence of defendant, and submits only the issue as to whether the sheep were damaged by such delays.

Looking at the charge as a whole, we do not think the assignment is well taken. The court in other parts of its charge defined negligence and ordinary care in general terms, and as applicable to the pleadings and testimony in this case, and instructed the jury to apply these legal principles in answering special issue No. 1, as to whether or not there was want of ordinary care.

Negligence was the only controverted issue submitted in special issue No. 1. The fact that there was delay in the shipment, and that plaintiffs were damaged thereby, in that there was a material decline in the Kansas City market, was shown by the uncontroverted evidence.

[7] Under the facts as hereinbefore set forth, the jury were justified in finding that the delay was caused by the negligence of the railway company. At least, that the negligence of the railway company concurred with the act of God as a proximate cause of the injury, but for which negligence the injury would not have occurred. Such fact rendered the defendant liable in damages. Mistrot v. Ry. Co., 209 S. W. 775; Ry. Co. v. Penny, 178 S. W. 971; Wald v. Ry. Co., 162 Ill. 545, 44 N. E. 888, 35 L. R. A. 358, 53 Am. St. Rep. 332 (citing 1 Sher. & Redf. on Neg. 4th Ed., sec. 39; Wolf v. Express Co., 43 Mo. 421, 97 Am. Dec. 406; Ry. Co. v. Curtis, 80 Ill. 324; Michaels v. Ry. Co., 30 N. Y. 564, 86 Am. Dec. 415; Read v. Spaulding, 30 N. Y. 630, 86 Am. Dec. 426; McGraw v. Ry. Co., 18 W. Va. 361, 41 Am. Rep. 696; Deming v. Ry. Co., 48 N. H. 455, 2 Am. Rep. 267; Read v. Ry. Co., 60 Mo. 199; Davis v. Garrett, 6 Bing. 716; Williams v. Grant, 1 Conn. 487, 7 Am. Dec. 235; Crosby v. Fitch, 12 Conn. 410, 31 Am. Dec. 745; Rodgers v. Ry. Co., 67 Cal. 607, 8 Pac. 377; Salisbury v. Herchenroder, 106 Mass. 458, 8 Am. Rep. 354; Higgins v. Dewey, 107 Mass. 494, 9 Am. Rep. 63; Ry. Co. v. Anderson, 94 Pa. 360, 39 Am. Rep. 787; Ry. Co. v. School District, 96 Pa. 65, 42 Am. Rep. 529).

There is an irreconcilable conflict in the decisions on this question. We think the true rule is as stated in that admirable work, R. C. L., vol. 5, p. 222, in the following language:

"A common carrier is not, however, exempt from liability for a loss or for damages for delay which results from an act of God, if there is concurrent negligence in the carrier. In other words, an act of God which excuses the carrier must not only be the proximate cause of the loss, but the better opinion is that it must be the sole cause."

The same objection as to two issues being involved is made to special issue No. 2; that is, that it involves the issues of negligence as to the condition of the pens, and as to whether any damage resulted therefrom. The undisputed evidence showed that the sheep were damaged by reason of the condition of the pens. The only thing which the jury could have considered under this issue was negligence.

[8] The statute contemplates that each issue of fact be submitted separately. R. S. (Vernon's Sayles') art. 1984a. But where two matters of fact are combined in one question, and one of them is not in reality an issue of fact, on account of the undisputed testimony

in reference thereto, no reversible error is committed.

[9] It is also contended by plaintiff in error that the finding of the jury as to the issue No. 2 is unsupported by the evidence. This contention is based upon the proposition that the undisputed evidence shows that the sheep were not injured by simply being put in muddy pens, but by keeping them there five or six days; and that the undisputed evidence shows that they were kept in the pens because of delay in forwarding them, occasioned by the act of God. Our holding on issue No. 1 disposed of this contention adversely to plaintiff in error.

[10] We do not think that there was error in admitting the deposition of the salesman who sold the sheep as to their weight and the price for which they were sold.

[11] The court did not err to the injury of plaintiff in error in refusing to give special charge A. The jury could not have found for the defendants in error under this charge, unless they had found that the delay was not due to the negligence of the railway company. In answer to special issue No. 1 they found to the contrary.

[12] If it was error to charge that the burden of proof was on the defendant to show that its negligence did not concur with the act of God in producing the injury, we do not think the case should be reversed on account of such error, as the undisputed evidence shows such concurrent negligence, both as to the wreck, and at least as to two of the bridges, but for which negligence the injury would not have occurred. The court charged the jury that the burden of proof was on the plaintiffs to establish the material allegations in their petition. The material allegations of plaintiffs' petition were the negligence of defendant as to the matters complained of.

Other assignments of error not specifically discussed herein have been carefully considered and overruled.

Finding no material error of record, we affirm the judgment of the trial court herein.

Affirmed.