## SWEETWATER PROGRESSIVE MUT. LIFE & ACCIDENT ASS'N v. ALLISON et al. (No. 600.)

Court of Civil Appeals of Texas. Eastland.
Nov. 8, 1929.

Rehearing Denied Jan. 3, 1930.

Beall, Beall & Beall, of Sweetwater, for appellant.

Thos. J. Coffee, of Big Spring, and S. H. Millwee, of Colorado, Tex., for appellees.

FUNDERBURK, J. This is a suit by Mrs. Dora Allison, joined by her husband against the Sweetwater Progressive Mutual Life & Accident Association, seeking to recover upon a mutual benefit certificate for an alleged permanent partial disability consisting of the loss of the use of one foot. W. W. Davis was joined as a defendant in the case in ·his official capacity of secretary-treasurer of the association.

Upon the trial of the case two special issues were submitted to the jury, as follows:

"Special Issue No. 1: Has the plaintiff Dora Allison sustained the permanent loss of the use of her left foot by reason of the injury complained of in her petition? Answer 'Yes' or 'No.'

Special Issue No. 2: Has the plaintiff Dora Allison become permanently partially disabled by reason of injury to her left foot as complained of by her in her petition? Answer 'Yes' or 'No.'"

The jury having answered both issues in the affirmative, judgment was rendered for the plaintiff for $1,000 as prayed for. · The evidence based upon proper pleadings having shown that the defendant had a reserve fund of more than sufficient to pay the amount of the recovery, it was further adjudged that defendant W. W. Davis, as treasurer, make payment of the judgment out of funds in his possession belonging to the association. From the judgment the defendant has appealed.

It appears that the defendant association is an unincorporated mutual relief or benefit association which is expressly excluded from operation of the general insurance laws of the state by provision of Rev. St. 1925, art. 4859. Applicable provisions of the certificate in question read as follows:

"This certificate is granted in consideration of the statements, warranties and agreements made in the application hereof," etc.

"As herein provided, this policy is made payable in the sum of $1000.00, but in the case of death or total disability of the insured herein at any time before said membership shall reach 1000 members in good standing the association will pay to the insured or beneficiary only $1.00 per member then in good standing. However, when the actual membership shall exceed 1900 in numbers this policy shall be payable to the insured or beneficiary in the case of permanent disability or death of the assured in the sum of *two thousand dollars* respectively, and shall so remain until the membership shall from some calamity or other reason be reduced to a number below 1400, in which event said policy· shall drop back to and become payable in the sum of *one thousand dollars* under the same conditions as above stated.

"After said membership shall exceed 1900, all assessments for death or permanent disability shall be $1.50 per member, and shall so remain until the membership shall be reduced below the said 1400 when it shall again drop back to the $1.00 assessment, and be payable as above stated.

"The loss of the use of both hands, or both feet, or one hand and one foot at the same time, or the irrecoverable loss of the sight of both eyes at the same time, caused by disease, sickness or accident, shall be considered as total permanent disability under the terms of ` this certificate.

"Permanent Partial Disability Benefit. In event the insured· shall at any time subsequent to the date of this certificate, while in good standing in this association, become permanently partially disabled, this association shall pay to the insured the sum of *one half of one full* assessment of *one dollar*, levied on each member in good standing at the time of such disability occurs, and which is paid into the association as a result of that particular assessment levy, to the amount of onehalf of policy in force at that date.

"The loss of the use of one hand, or one foot, or the irrecoverable loss of sight of one eye, caused by disease, sickness or accident, shall be considered as permanent partial disability under the terms of this certificate.

"The maximum liability of this association

to the insured * * * for any disability whatever, or because of both disability and death, under the terms of this certificate, shall be *one dollar* for each member in good standing at such time, regardless of any past benefits received as stipulated in the contract and so provided therein, and which is paid into the association as a result of one assessment levy, to the amount of *one thousand dollars*, or amount of policy in force at that date," etc.

In the application for membership is the recitation:

"I hereby make application for membership in the Sweetwater Progressive Mutual Life & Accident Association of Sweetwater, Texas, a Progressive Mutual Aid Association organized under the laws of Texas, and declare and warrant that answers to the questions below are complete and true, and I agree that they shall form the basis of contract of insurance between me and Sweetwater Local Progressive Mutual Life & Accident Association, and that policy which may be issued by the association shall be accepted subject to conditions and agreements contained in said policy."

Neither in the application for membership nor in the certificate of membership is there any reference to the constitution or by-laws of the association, nor agreement that the contract shall be subject to future amendments of either the by-laws or constitution.

The first question raised by appellant challenges the right of the insured to recover primarily a money judgment under the terms of the contract of insurance. It is contended that, inasmuch as the certificate of insurance provided that for a permanent partial disability the amount obligated to be paid was "one-half of one full assessment of one dollar levied on each member in good standing at the time such disability occurs, and which is paid into the association as a result of that particular assessment levy to the amount of one-half of policy in force at that date," the only right of action the insured could have had was one against the directors and officers of the association for a mandamus to compel the assessment and collection, and to receive only such amount as was collected. As a basis for the recovery directly of a money judgment, the insured, in her petition, alleged that there was on hand in the reserve fund more than sufficient to pay the amount of any judgment recovered, and alleged a breach of duty on the part of the association to make the assessment and collection at the time same should have been done. It is logical that where an obligation is specially limited or conditioned, the one seeking to enforce it should, by both allegation and proof, show that his claim comes within the limitation or condition; but the law seems to be pretty well settled that the obligation of an insurance company in the statement of which is named a maximum amount, even though same be limited to such an amount

as may be collected upon an assessment, may be enforced upon allegations of such maximum amount and breach of the duty to make the assessment and collection. It is far more difficult for the plaintiff than the defendant in such case to make the proof necessary to fix the proper amount of the judgment. It is therefore, from considerations of public policy, giving recognition to such fact that the rule has been adopted which relieves the plaintiff from making proof of the amount that would be collected from an assessment. Waco Mutual Life & Accident Ass'n v. Alford (Tex. Civ. App.) 289 S. W. 93; Fort Worth Mutual Benevolent Ass'n v. Golden (Tex. Civ. App.) 287 S. W. 291; Supreme Council v. Mamie Anderson, 61 Tex. 296; International Order, etc., v. Boswell (Tex. Civ. App.) 48 S. W. 1108; Covenant Mutual Life Ass'n v. Kentner, 188 Ill. 431, 58 N. E. 966, 969; Supreme Lodge K. of P. of the World v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409; Silvers v. Mich. Mutual Benevolent Ass'n, 94 Mich. 39, 53 N. W. 935.

In International Order, etc., v. Boswell, supra, the obligation of the certificate was to pay "fifteen (15) cents for each knight and daughter * * * in good standing." It was contended that the verdict should be returned for defendant "because the plaintiffs had failed to show the membership of the defendant's order, for the purpose of fixing the amount of defendant's liability." Held, " * * * the matters referred to were matters of defense, concerning which the plaintiffs were not required to offer any testimony; and, as there was no proof by either party as to the number of members in the defendant's order, the court properly declined to submit any issue to the jury in reference thereto."

In Fort Worth Mutual Benevolent Ass'n v. Golden, supra, it was held that the petition need not allege the number of members nor facts to show that assessment would produce the amount claimed.

In Covenant v. Kentner, supra, the obligation was to pay the assessment based upon a stipulated rate per member not to exceed $500. On this point the court said: "The last defense made at the trial was that no more than nominal damages can be recovered. It is argued that the proposition submitted on that subject was correct because there was no evidence how much an assessment would have yielded if made. If an assessment was necessary, the defendant had wrongfully refused to make it, and plaintiff was entitled to recover the damages occasioned by such refusal. Defendant had agreed to pay $5,000 if an assessment would yield that much, and the fact that there was no evidence an assessment would not yield said sum, or would produce only a nominal amount, justified the refusal of the proposition. The rule is that, in such case, if an assessment would not have realized the amount of the claim it is a matter of defense. The damages are presumed to

be the full amount of the certificate in the absence of evidence that they are less, and in such a case the association should be held for the whole amount."

The last-named case is also similar to the present one, in that there it was shown that there was a fund on hand out of which payment could be made, and out of which payment was by the judgment ordered to be made.

■ Appellant, by its second proposition, asserts error in the action of the trial court in overruling a special exception to the allegation in plaintiff's petition that the association was an "insurance company." We think the action of the trial court in this respect, if error, was wholly harmless. The fact that the association was not an "insurance company" to which certain statutory provisions apply is not important upon any of the questions arising in the case. That certain statutes of the state applying to insurance companies do not apply to the association is wholly immaterial. That fact does not make the association any the less an insurance company within the scope of the application of general principles of law. McCorkle v. Ins. Ass'n, 71 Tex. 152, 8 S. W. 516.

A further contention of the appellant is that the trial court erred in submitting special issue No. 1 to the jury over its objection that it embraced more than one question of fact. The issue was: "Has the plaintiff Dora Allison sustained the permanent loss of the use of her left foot by reason of the injury complained of in her petition?"

■ We do not believe the special issue was subject to the particular objection made. All parties seem to concede that "permanent loss" was necessary to be shown for plaintiff to be entitled to recover. Upon that theory it was not necessary to submit as independent questions that of the existence or fact of loss, and also that of whether such loss was permanent. We had occasion to hold in City of Abilene v. Annie Moore, 12 S.W.(2d) 604, that where more than one fact constitutes a single issue essential to a recovery, each such fact need not be separately submitted. Besides, as will hereafter be shown, it is our opinion that the fact of permanency was immaterial and the only important matter to be determined as submitted in the issue was the existence of loss. That the loss, if it existed, was due to sickness, or accident, was undisputed. We also regard the evidence as undisputed that the nature of the disease was anchylosis; but even if we be in error in this, the important fact was whether the cause was sickness or disease, and not the particular name of the disease or sickness. Had plaintiff sought to prove that the disease was something other than anchylosis, an objection to the evidence on the ground of variance should, perhaps, have been sustained. But no such question is presented. It has been held not to be error to submit an issue embracing more than one fact

where only one is disputed. K. C. M. & O. Ry. Co. v. Blackstone & Slaughter (Tex. Civ. App.) 217 S. W. 208; G. C. & S. F. Ry. Co. v. Harrell (Tex. Civ. App.) 270 S. W. 187; City of Abilene v. Moore (Tex. Civ. App.) 12 S.W.(2d) 604.

Certain other propositions are presented relating to the submission of special issue No. 2, and the definition of certain terms given by the court in connection with same. Special issue No. 2 was as follows: "Has the plaintiff Dora Allison become permanently partially disabled by reason of injury to her left foot by reason of the injury complained of in her petition?"

■ We have reached the conclusion that this special issue was wholly immaterial. If insured had lost the use of one foot, as the jury found she had, in answer to special issue No. 1, then the certificate itself says that that fact shall constitute permanent partial disability. The certificate answers as a matter of law the very question submitted to the jury as special issue No. 2. Such being the case, errors, if any, in defining terms or otherwise in regard to the submission of that issue were immaterial and harmless.

■ Another proposition of appellant embodies the contention that the by-laws and constitution and amendments of same subsequent to the making of the contract of insurance are binding upon the insured. It was shown, or attempted to be shown, that after the certificate in question was issued the by-laws were amended so as to change the definition of "partial permanent disability" in such way as to require that the loss of a foot must be by a severance of same above the ankle. This amendment, of course if binding upon the insured, would, under all the evidence, prevent a recovery. Appellant insists that the constitution and by-laws constitute a part of the contract of insurance. It is unnecessary for us to pass upon the question of whether or not the constitution or by-laws, neither of which were referred to in the application or the certificate, can be considered as a part of the contract. We merely express the doubt that such is the case. Expressions in the application and certificate quoted above seem to show an intent to express the whole of the contract in the application and certificate. We have no doubt, however, that the contract could not be materially altered to the prejudice of the insured or beneficiary by subsequent amendment of the by-laws without the insured's consent. The very authorities relied upon by appellant to support this proposition are to the contrary. Ruling Case Law, in discussing the right of a mutual benevolent association to amend its by-laws, shows that such right is subject to the proviso that "no new condition is injected into the contract which will materially change or affect it, and to which a member does not consent." 19 R. C. L. p. 1201, § 18. The same authority also says: "The power of amendment possessed.

by benevolent and beneficial associations over their by-laws is no broader than that of any other corporation, and while they may enact such amendments as they see fit for governing the future conduct of the association so long as such enactments have no retroactive effect, they cannot vary or impair the contractual relations they entered into with existing members unless such right has been expressly reserved." 19 R. C. L. p. 1202, § 19.

■ The amendment sought to be proved was certainly in conflict with the provisions of the certificate. "In case of conflict between the terms of the certificate issued to the member and the terms of the constitution or by-laws the society will be deemed to have waived the provisions of the constitution or by-laws, and the certificate will govern the rights of the parties if it is one which the society has power to issue, and the constitution and by-laws are not attached thereto or referred to therein." 45 C. J. 33; International Travelers' Ass'n v. Griffing (Tex. Civ. App.) 264 S. W. 263; Francis v. Int. Travelers' Ass'n (Tex. Civ. App.) 260 S. W. 938; International Travelers' Ass'n v. Branum (Tex. Civ. App.) 169 S. W. 389.

■ The application of still another principle would lead to the same result. "Alterations made in the constitution and by-laws of a fraternal benefit society, whether by amendment or repealing of existing provisions, or by enactment of new provisions, will be given prospective operation unless it clearly appears that they were intended to operate retrospectively, even if the laws of the society expressly authorize alterations therein, and although the member agrees to be bound by future changes and even where retrospective operation was intended the alterations do not govern the rights and liabilities of pre-existing members and their beneficiaries if vested rights would thereby be defeated or the obligation of contracts be impaired." 45 C. J. 35; Ericson v. Supreme Ruling, etc., 105 Tex. 170, 146 S. W. 160; International Travelers' Ass'n v. Griffing (Tex. Civ. App.) 264 S. W. 263; Supreme Council A. L. H. v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629; International Order, etc., v. Boswell (Tex. Civ. App.) 48 S. W. 1108.

Appellant's sixth proposition complains of the court's definition of "loss of the use" given in connection with special issue No. 1. The gist of the complaint is that the definition permitted the jury to affirmatively answer the issue upon a finding of an *impairment* of the use. In connection with this issue the court instructed the jury: " * * * By the term 'loss of use' is meant that the foot is so affected permanently as to substantially and materially impair the use thereof in the practical performance of its function in the pursuit of the ordinary duties and occupation of the plaintiff, Dora Allison. If the plaintiff's foot is so affected, then there is a loss of its

use, and if you so find and believe from a preponderance of the evidence, you will answer the above issue in the affirmative; but, if you do not so find, and believe, from a preponderance of the evidence, you will answer said issue in the negative."

We have concluded that this proposition should be sustained. By referring back to the provisions of the certificate, it will be seen that it provides benefits for "permanent total disability" and for "permanent partial disability." The only difference between "permanent total disability" and "permanent partial disability" is that the former consists of the loss of the use of both hands or both feet, or one hand and one foot at the same time, or the irrecoverable loss of the sight of both eyes at the same time, while the latter consists of the loss of the use of one hand or one foot, or the irrecoverable loss of the sight of one eye. It is at once apparent that much importance must be attached to the meaning of the word "loss." The trial court appears to have understood the word in a sense to include the idea or quality of permanency.

We doubt if it can be said that the more ordinary meaning of the word "loss" includes permanency as an element thereof. But the word may have that meaning. In Queenan v. Palmer, 117 Ill. 62, 619, 7 N. E. 470, 613, 617, the Supreme Court of Illinois mentions two or three different meanings of the word thus: "In its most general sense, the word 'loss' means any deprivation. In some instances it may mean that which can never be recovered, and in others that which is simply withheld, or that of which a party is dispossessed." It is a familiar rule that "where a word has a broad meaning and also a restricted meaning, both of which are consistent with approved usage, the question of which meaning is intended in a particular case must be determined from the context." 13 C. J. 532. Another rule of construction well stated by the same authority is: "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted and a construction leading to an absurd result should be avoided." 13 C. J. 540. It was, perhaps, an attempt to apply this principle that led the trial court to give to the word "loss" a meaning equivalent to "permanent loss."

■ Actuated, no doubt, by the same considerations, the court, in Modern Order of Praetorians v. Taylor, 60 Tex. Civ. App. 217, 127 S. W. 260, construed "loss of a foot" to mean "permanent loss." In that case, as here, unless "loss" were construed to mean "permanent loss," there would be a right of re-

1112

covery for a mere temporary loss. It is easily conceivable that such a construction would in many cases operate rather harshly against the association. But in this case we are met with much difficulty if we undertake to construe "loss" as "permanent loss." We are required under one of the above-mentioned rules to look to the context. In doing so we must keep in mind still another rule, stated in Corpus Juris as follows: "Words used in one sense in one part of a contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument, where there is nothing in the contract to indicate otherwise." 13 C. J. 532. In the same sentence in which the word occurs we find that "permanent partial disability" as regards a foot means simply the loss of the use of the foot. But as regards an eye, it means the *irrecoverable* loss of the sight of one eye. If we are to give any effect whatever to the word "irrecoverable"—evidently synonymous with "permanent"—then by the clearest implication the "loss of the use of a foot," which constitutes permanent partial disability, does not have to be irrecoverable or permanent. The fact that the disability defined is designated permanent does not help the difficulty. For one thing, a word is never used in a definition of itself. It is further an elementary rule: "Where the parties define the words which they purpose using, the contract will be interpreted according to such definitions, if free from ambiguity." 13 C. J. 532. Definitions thus agreed upon may be arbitrary and a permanent disability be so defined as to mean a temporary disability in the usual and ordinary sense. But, giving all the weight possible to the fact that it is a permanent and not a temporary disability which the parties have defined as the "loss of the use of a foot," and to the further fact that if we do not give to the word "loss" a meaning which is the practical equivalent of "permanent loss," the contract is, to say the least, an improvident one from the standpoint of the association, are we warranted in holding that the word "loss" as it appears twice in the same sentence is used in two different senses? There is no justification for so holding, except to avoid the apparently harsh result. Is that alone sufficient to require the disregard of the other tests before mentioned? It must be remembered that: "It is not the province of a court * * * to change the terms of a contract which has been entered into, even though it may be harsh and unreasonable." 13 C. J. 541.

, For us to hold that the word "loss" as thus used in the definition of permanent partial disability means something different than the context shows, solely to prevent the contract from appearing unduly onerous upon the association, would be to reverse the application of the well-known rule that a contract of in-surance is to be construed most strongly against the insurer and in favor of the insured. The insured has by a great preponderance of the evidence shown an injury within the terms of the definition of "permanent partial disability" as defined by the parties in their contract, provided the word "loss" be understood in its usual and ordinary sense and in the sense required by the immediate context in which it is used. If then we construe it most favorable to the insured and against the association, we must hold that the word "loss" means simply "loss" and not "permanent loss."

■ But we cannot assent to the proposition that any degree of mere impairment of the use of a foot can be regarded as the equivalent of the "loss of the use" of a foot. Under the definition of the court the jury was so authorized to find. In answer to another one of appellant's propositions, appellee contends that the evidence showing that there was a loss of the use of the foot was undisputed. If we were justified in so holding, perhaps we should further hold that the error in the definition was immaterial. But proof of loss was the very gist of plaintiff's cause of action. The evidence most certainly going to show that there was a loss of the use of the foot is the evidence of interested witnesses. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447. There is some evidence, slight, it is true, tending to discredit the fact of the loss of the use of the foot. The fault in the court's definition of "loss of use" is one that exists just the same, even if we should be in error in not ascribing to the word "loss" the meaning of permanent or irrecoverable loss. In any event, we think the definition was error, and are unable to say that it was harmless. For that reason the judgment of the trial court will be reversed, and the cause remanded.