WINTERS MUT. AID ASS'N, CIRCLE NO. 2, v. REDDIN.

No. 729.

Court of Civil Appeals of Texas. Eastland.
Oct. 10, 1930.

Rehearing Denied Nov. 7, 1930.

Beall, Beall & Beall, of Sweetwater, and O. L. Parish, of Ballinger, for appellant.

Thomas & Coffee, of Big Spring, for appellee.

FUNDERBURK, J.

Citizens' Mutual Aid Association, an alleged unincorporated association, on December 10, 1923, issued to J. E. Reddin a certificate of membership therein. The certificate contained the recitation that his membership was based upon his application, "which application is filed in the office of the Citizens Mutual Aid Association of Winters, and made a part of this contract, and in accordance with the by-laws of the Association." The application, among other things, stated that the age of the applicant was forty-two years, and that his occupation was that of barber. The certificate of membership also contained the following relevant provisions:

"B. In the event of the Insured becoming totally and permanently disabled because of sickness while in good standing and before having reached the age of 65 years, will be paid $1.00 for each member in good standing at the time of such total disability, not to exceed $1,000.00.

"C. In the event of the Insured, while in good standing, suffers the loss of both eyes, both hands, both feet, or any two of the above members, such member will be paid $1.00 for each member in good standing at the time of such loss, not to exceed $1,000.00."

About January 1, 1926, the association was merged with another similar association, and thereafter conducted under the name of Winters Mutual Aid Association, Circle No. 2. Subsequent to the merger, upon calls for three assessments of $1 each, claimed to be in arrears, Reddin remitted the amount claimed, accompanying same with a health certificate, dated May 21, 1927, among other things stating: "I am in good health at this time and free from any disease which would prevent me from obtaining life insurance, and that my eyes and limbs are normal." This suit was afterwards brought by said J. E. Reddin against Winters Mutual Aid Association, Circle No. 2, seeking to recover upon said certificate for an alleged injury, occurring about December 15, 1928, through which he lost the use of both feet "due to fallen arches"; it being further alleged that "his said feet are in such condition that they, nor either of them, can be used for the ordinary and practical purposes for which feet are ordinarily used, and that plaintiff has lost both of his feet within the meaning of Clause C of the membership certificate," etc.

There were further allegations to the effect that the condition of his feet was caused by sickness, resulting in his being permanently and totally disabled, within the meaning of Clause B of said certificate. In the same connection it is alleged:

"That plaintiff is not an educated man, and has earned his living in the past partly in the occupation of a barber, and partly by farming, and the condition of his feet forever prevent him from pursuing either occupation, and he knows no other occupation he could follow with his feet in the condition they are in."

Among the defenses of the defendant, in addition to general and special exceptions and a general denial, were: (1) That the constitution and by-laws of the Citizens' Mutual Aid Association were part of the contract of insurance and contained a provision for subsequent amendment binding upon the members, and also a provision that the issuance of any new certificate should automatically cancel a former certificate. That after Citizens' Mutual Aid Association was taken over by appellant, the constitution and by-laws were so amended as to define the loss of feet and total disability in such way as to preclude any right of recovery by insured upon the alleged facts, and that a new certificate had been issued and properly mailed to the insured, thus having the effect of cancelling the certificate sued on. (2) That insured had become delinquent in the payment of dues and had been reinstated because of certain representations as to his health, and that his eyes and limbs were normal, which it was alleged were false representations, resulting in the forfeiture of his rights under the certificate. (3) That material misstatements were made in the original application, having the effect to avoid liability under the contract.

The case was tried with a jury, and the judgment is based upon the following special issues and the jury's findings thereon:

"Issue No. 1: Has the plaintiff, J. E. Reddin, lost the use of both of his feet? Answer yes or no. Answer: Yes.

"Issue No. 2: Is the plaintiff, J. E. Reddin, totally disabled? Answer yes or no. Answer: Yes.

"Special Issue No. 1: (Requested by defendant) at the time plaintiff made his application for membership in the Citizens Mutual Aid Association of Winters, Texas, on December 10th, 1923, were his feet and limbs in normal condition at that time? Answer yes or no. Answer: Yes."

With respect to issue No. 1, the court instructed the jury as follows:

"You are instructed that by the term 'loss of the use of both of his feet', is meant whether both of his feet are so affected as to impair the use thereof to such an extent that the said J. E. Reddin is unable to successfully follow the pursuits of a laboring man which require him to stand or walk on his feet."

In connection with issue No. 2, the court charged the jury:

"If you find from the evidence that the said J. E. Reddin is suffering from impairment of his feet of such nature and to such extent as renders him unable to perform all labor and work necessary to be done to enable him to successfully follow the occupation of a tenant farmer and to render him unable to perform all labor and work necessary to enable him to successfully follow the occupation of a barber, and as to render him unable to perform all the work and labor necessary to enable him to successfully follow any and all other substantial occupations open to a laboring man, and which he would be able to follow were it not for the condition of his feet, then the said J. E. Reddin is totally disabled within the meaning of the above question; but if the said J. E. Reddin is able to perform all the work and labor necessary to enable him to follow the occupation of a tenant farmer, or the occupation of a barber, or of any other substantial occupation open to a laboring man which he would be able to follow were it not for the condition of his feet, then he is not totally disabled."

From a judgment for plaintiff based upon the foregoing findings, the defendant prosecutes this appeal.

Appellant brings up thirty-seven assignments of error, under which is asserted forty points or propositions. No discussion of each separate point could be confined within reasonable space. We therefore overrule without discussion each and all of appellant's contentions other than those hereinafter mentioned.

Appellant, by its proposition No. 11, insists that the evidence showed conclusively that the insured had not lost the "use" of his feet, as that term is generally understood, and that therefore the court should have given a peremptory instruction as requested by it. By its twelfth proposition it is contended that the evidence conclusively showed that plaintiff was not totally and permanently disabled, and hence the peremptory instruction should have been given as requested. If it were conceded that the undisputed evidence showed that plaintiff had not lost his two feet, it would not follow that a peremptory instruction should have been given. It is likewise true that, if it were conceded that, as a matter of law, there was no total disability, a peremptory instruction would not be warranted upon the basis of such fact alone. Only if both of said propositions be sound does it follow that a peremptory instruction would have been justified. But, waiving the inadequacy of each proposition singly to present a question of error, we will consider

both together in order to determine if, as a matter of law, we can say that the evidence showed that plaintiff had not lost the use of both feet and had not become totally and permanently disabled.

■■ The words "loss of both feet," and "totally and permanently disabled," as employed in the certificate of membership, are not, defined by the contract, nor is the ordinary meaning of the words in any way restricted or qualified. The application for membership, expressly made a part of the contract, states the occupation of the insured to be that of a barber; but the contract does not expressly purport to indemnify him against the "loss of two feet" or against becoming "totally and permanently disabled," only in his occupation as a barber. But we think that particularly the provision as to total and permanent disability must be construed as relating to some one or more, or to all occupations. To hold that it referred to any and all occupations would be giving the contract a construction not required by the phraseology employed, and one that would no doubt do violence to the rule requiring such contracts to be construed most strictly against the insurer and in favor of the insured. We are inclined to the view that the loss and disability against which the indemnity is provided in this contract relate to the occupation in which the insured is employed at the time of the sickness or injury resulting in the loss or disability. That same does not relate alone to, the occupation named in the application is, we think, persuasively indicated by the fact that the contract does not prohibit or restrict a change of occupation. But, for the purpose of determining the question now presented, it may be regarded as immaterial whether any other occupation than that of a barber comes within the purview of the contract. The contract, by its terms, shows the insured to be employed in the occupation of a barber. There is testimony to show that he was employed, at least partially so, in that occupation when he claimed to have received his injuries. A prima facie case is made, we think, by a showing of these facts, sufficient to entitle the insured to the promised indemnity against permanent and total disability to follow his occupation as a barber.

■■ "Loss of two feet" is shown by proof of the loss of the use of two feet. Modern Order of Praetorians v. Taylor, 60 Tex. Civ. App. 217, 127 S. W. 260. "Use" is thus employed, we think, as relating to the insured's occupation as a barber, or other occupation, in case he had changed from that of a barber. There is no more reason or logic in giving the term a strict and literal meaning than is the case with the term "total disability," hereafter noticed. Although insured may be able to make some use of his feet, if he has practically lost their use to the extent required to

enable him to follow the occupation of a barber, he brings himself within the meaning of the term "loss of two feet."

■■ With reference to "total and permanent disability," the words will not be given so strict and literal interpretation as to exclude the ability to do anything whatever required in the occupation of the insured. Commonwealth Bonding & Casualty Co. v. Bryant (Tex. Sup.) 240 S. W. 893. Rather the recognized test is: Have the injuries "rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation"? Id. The language quoted, it must · be admitted, itself requires interpretation. Does it mean that for total disability to exist there, must be an inability to perform any of the material duties pertaining to his occupation? Or, does it mean that, if there is any one or more of such material duties which he is unable to perform, although there be others which he can, yet total disability exists? We think the latter must be held to be the correct interpretation of the rule as thus laid down by the Supreme Court. That construction of the language seems necessary to make parts of the same opinion consistent with each other. Also, it is believed that the Supreme Court, in adopting the opinion of Judge Ryan in Great Southern Life Insurance Company v. Johnson (Tex. Com. App.) 25 S.W.(2d) 1093, 1097, so construed its former holding. In the last-named opinion the test of total disability is said to be that it "exists if he [i. e. the insured] is unable to do any substantial portion of the work connected therewith." In other words, in occupational insurance, providing indemnity against total disability, such total disability exists if the insured is unable to perform any one or more material duties necessary to be performed in following his occupation. The indemnity thus provided is not one "against loss of income but against loss of capacity to work." Great Southern Life Insurance Co. v. Johnson, supra.

■■ Recurring now to the question of the propriety of a peremptory instruction, there was evidence to support a finding that appellee was still pursuing his occupation as a barber when he suffered the alleged loss and disability. Insured testified: "I tried to work and would work a little while and had to quit. I tried to barber over here for a man and I would work a few hours, maybe until 4 o'clock, and would have to quit, and I cannot get about on my feet to do any work only just for a short time, for a few hours, then I would have to quit. * * * At night the pain is so great I cannot sleep * * * until maybe 10 or 11 o'clock. * * * I have not tried to barber since the 15th of December, 1928. * * * I have had several to ask me to work and I refused.

I could be making $60.00 a month. I could be working every Saturday if I could stand on my feet." We think the evidence raised questions for the jury, both as to loss of feet and total and permanent disability. The fact, even if undisputed, that insured did perform some substantial part of the work of his occupation, is not conclusive of the question of his ability to do so. As said in Fidelity & Casualty Co. v. Joiner (Tex. Civ. App. writ refused) 178 S. W. 806, 809: "It not infrequently happens that one suffering from injuries to his person performs duties pertaining to his occupation which he is wholly unable, in the reasonable and proper sense, * * * to perform."

Appellant next contends that the court, over objection, gave an incorrect definition of the term, "loss of the use of both feet," in connection with special issue No. 1. This instruction is set out in full in the foregoing statement. It is argued that the instruction warranted the jury in finding that insured lost his feet, based only upon evidence showing a mere temporary loss of the use of them. We believe the instruction is subject to this criticism. Although, as already said, loss may be shown by proof of the loss of use, yet we think "loss of use," in order to be the exact equivalent of loss of feet, must be a permanent loss of the use. Modern Order of Praetorians v. Taylor, supra. Whether or not this error must result in a reversal of the case is dependent upon whether or not the judgment is properly and independently supported on the other ground of total disability. A further complaint as to the use of the word "successfully" will be disposed of by what is said next following.

Complaint is likewise made of the court's instruction given in connection with special issue No. 2, relative to the meaning of "total and permanent disability." The instruction complained of is likewise quoted in full above. Of the questions raised relative to the correctness of this instruction we deem it necessary to notice but one. For the reason already mentioned, consideration of the same may be limited to that portion referring to the occupation of a barber. In so far as it relates to other occupations it was more favorable to appellant than to appellee, except perhaps with reference to the single point presently to be mentioned. What has already been said with reference to total disability would lead logically to the conclusion that there was no error in the instruction in question, unless it exists by reason of the use of the word "successfully." The use of the word "impairment" was not the choicest diction, but the qualifying words "of such nature and to such extent as renders him unable to perform all labor and work necessary to be done," etc., requires "impairment" to be understood in the same sense as "loss of the use of," which latter expresses more exactly the meaning intended. There is, however, a question of some difficulty presented in the contention that the use of the word "successfully," as qualifying "follow" (the occupation of a barber), was more onerous on appellant than required by law. It is insisted that ability to follow an occupation is not the same as ability to successfully follow such occupation. Or, stated another way, that total disability to follow an occupation is not to be tested by whether one can or cannot successfully follow such occupation. We recognize that in a sense the insured may not have successfully followed his occupation, even if he had suffered no disability. If the word was understood in that sense, there could be no doubt it was error. But if thus used it would have been so irrelevant to anything before the court or that was submitted to the jury, that we are unable to adopt the view that the jury understood the word in any such sense. We think rather the only meaning which the jury could have attached to the word as so used was the same as if the court had said "to enable him to succeed in following the occupation of a barber," etc. In that sense the same thing, no doubt, would have been implied if the word had been altogether omitted. What does it mean to follow an occupation? As said in Monahan v. Supreme Lodge, 88 Minn. 224, 92 N. W. 972, 974: " 'Following any occupation' means something more than the doing of one or more acts pertaining thereto. They involve the idea of continuity, and involve, also, the doing of all of those things which are an essential part of the work or business in which a party is engaged." It was not necessary that a man should be disabled to the extent that he has not sufficient physical power to follow an easy occupation and to perform some slight service, although under great disadvantage and while suffering great bodily pain. Giving to the words "follow the occupation of a barber" such meaning, which we think should be done, the word "successfully" is redundant, and may be treated as surplusage, as it really adds nothing. We are not unmindful that it should be given some meaning, if possible; but we are not required to go to absurd lengths in order to do so, nor upon the whole thereby to give the contract a construction less favorable to the insured than to the insurer. We are therefore of opinion that there was no error in the instruction. We are further of opinion that a complete and independent support of the judgment is afforded by the jury's finding upon special issue No. 2, from which it follows that the error in the instruction noted above relative to issue No. 1 becomes immaterial and harmless.

It is further our opinion that, as disclosed by this record, appellant did not have or exercise any power to change the terms of the contract of insurance by amend-

ment of its constitution and by-laws. We do not construe the contract to expressly make the constitution and by-laws a part thereof. The amendments in question are in conflict with the terms of the certificate. In such case the express terms of the contract control. See Sweetwater Progressive Mutual Life & Accident Association v. Allison (Tex. Civ. App.) 22 S.W.(2d) 1107, and authorities there cited. Also, the amendments would have to be construed as operating prospectively and would therefore not affect the certificate in question. Id.

Appellant also complains of the refusal of the court to submit an issue as requested calling for a finding as to whether insured had forfeited his membership because of alleged false representations made in the health certificate given as a prerequisite to his reinstatement as a member. The evidence was so wholly wanting upon one fact necessary to make out this defense that we are of opinion there was no error in refusing to submit the same as an issue. The assessments which the contract obligated the insured to pay were those "levied by the directors of the association." There was no evidence that the directors levied the assessments in question. Forfeitures are not favored. Appellant had the burden of proof to show the forfeiture.

Being of opinion that the record discloses no reversible error, we think the judgment of the trial court should be affirmed, and it is accordingly so ordered.