## TRAVELERS INS. CO. v. COX.
### No. 1497.

Court of Civil Appeals of Texas. Eastland.
Oct. 18, 1935.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

John W. West and J. A. Carlisle, both of Dallas (John M. Willis, of Dallas, on the brief), for appellee.

FUNDERBURK, Justice.

The Travelers Insurance Company was defendant below and appellant here. Samuel H. Cox was plaintiff below and appellee here. The parties will be referred to as plaintiff and defendant, as in the trial court, or as insured and insurer.

The suit was one to recover upon an insurance contract consisting of a master policy providing group insurance for the employees of the Pure Oil Company, and a certificate to the plaintiff as a member of the group. In so far as material, the nature and degree or extent of the disability insured against was that the insured "become wholly disabled by bodily injuries or disease and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit." The allegations, in addition to that of other material facts, were that plaintiff suffered an accidental injury from the result of which "he has been permanently and totally disabled from doing manual labor, and cannot secure and retain employment, and is totally and permanently incapacitated from doing the usual tasks of a workmen." The jury to whom the case was submitted upon special issues, by their verdict, found all issues in favor of the plaintiff, including findings that plaintiff was totally disabled and that he was

permanently disabled. In accordance with the verdict, judgment was rendered for the plaintiff for $1,580, which included interest and attorney's fees.

Defendant's first assignment of error presents the question of the sufficiency of the plaintiff's petition to state a cause of action tested by a general demurrer. If the pleading was fatally defective, it was so because of its failure to allege the degree or extent of disability against which the insurer·by its contract promised to indemnify the insured. According to the policy as its terms were alleged, that degree or extent of disability was that the insured "become wholly disabled by bodily injuries or disease and will be permanently, continuously and wholly prevented thereby, for life, from engaging *in any occupation or employment* for wage or profit." (Italics ours. ) The degree or extent of disability which plaintiff alleged that he had suffered was that "he has been permanently and totally disabled from doing manual labor and cannot secure and retain employment, and is totally and permanently incapacitated from *doing the usual tasks of a workman.*" The policy, according to the allegations, required the insured *to make proof of the disability against which the indemnity was promised*, and plaintiff alleged that he made such proof and that the proof was "that he was wholly disabled by bodily injuries and permanently and continuously prevented thereby, for life, from doing manual labor and from following the usual and customary tasks of a workman, and from securing and retaining employment *doing manual labor.*" (Italics ours.) That plaintiff intended to allege that he made proof of a lesser or different degree or extent of disability than he alleged he suffered would, we think, be an unreasonable construction of his allegations. It would appear, therefore, that by the allegation that he was by his disability "wholly prevented * * * from engaging in any occupation or employment" he meant the same as that of which he made proof, namely, that he was prevented "from securing and retaining employment *doing manual labor.*" (Italics ours.) In the petition there was no averment of plaintiff's occupation at the time of the injury. There were no allegations that he was doing "manual labor" or that his tasks were only those of a "workman," or that his ability, training, and experience were such as to limit him to engaging in only

an occupation or employment requiring manual labor or providing the tasks of a workman. Every fact alleged may be taken as true, as it must upon general demurrer, and yet not exclude the possibility that there were occupations or employments which plaintiff by reason of his mental and physical qualities, education, experience, and training was able to engage in, notwithstanding the disability alleged. To state a cause of action plaintiff was required to allege the facts to show not merely a total disability and a permanent disability within the usual meaning of those terms, but a disability, the degree or extent of which was to prevent the· insured "for life from engaging in any occupation or employment for wage or profit." Questions of the proper definition, or true meaning, of the terms "wholly disabled," "totally disabled," or "permanently disabled" are immaterial. Whatever the usual connotation of those terms, under the alleged provisions of the policy in question, the disability against which the plaintiff was insured was only such as to wholly prevent him from "engaging in any occupation or employment for wage or profit." His rights would be precisely the same if his condition had been denominated simply "disabled" or even "partially disabled." The more general term would have to yield to the more specific. Likewise the ordinary meaning of "permanent" or "permanently" is rendered unimportant because the contract itself makes perfectly clear that a disability which continues "for life" was meant. The issues which it was necessary for plaintiff's petition to present as essential elements of his cause of action were, therefore, not whether the insured was wholly or totally disabled, and permanently disabled, but whether he was by disability prevented from pursuing any occupation or employment for wage or profit, and, if so, was that disability for life. The question is: Did the allegations of the petition, liberally construed in favor of their sufficiency, present those issues?

It is well to consider at ˏthis point whether the terms "engaging in any occupation or employment for wage or profit" mean the same as "performing any and every kind of duty pertaining to his (i. e.,. insured's) occupation," the disability against which the indemnity was promised in the policy involved in Commonwealth Bonding & Casualty Ins. Co. v. Bryant, 113 Tex. 21, 240 S. W. 893. If so, then

the test of liability upon the authority of the last-named decision would be that the disability must be such that the injuries "rendered the insured *substantially* unable, in the exercise of ordinary care, to perform every *material* duty pertaining to his occupation." (Italics ours.) But the language in the two provisions is so different that the above test cannot be applied to both alike without doing violence to the most elementary principles of contract law. Of course, there are principles of law which do have common application. One, stated in the Bryant Case, is: "The court will not give such a literal interpretation to the language of" the contract "as to practically relieve the insurer of all obligation thereunder." See Great Southern Life Ins. Co. v. Johnson (Tex. Com. App.) 25 S.W.(2d) 1093, 1097. That the extent or degree of disability against which the indemnity is promised in this policy is not the same or subject to the same test as that laid down in the Bryant Case has been held in Metropolitan Life Ins. Co. v. Wann (Tex. Civ. App.) 28 S.W.(2d) 196; American National Ins. Co. v. Briggs (Tex. Civ. App.) 70 S.W.(2d) 491; Sibley v. Travelers' Ins. Co., 275· Ill. App. 323; Buckner v. Jefferson Standard Life Ins. Co., 172 N. C. 762, 90 S. E. 897; and other cases, by a soundness of reasoning which seems to us conclusive. The distinction was recognized in Great Southern Life Ins. Co. v. Johnson, supra, as shown by the following: "While the policy in Commonwealth Bonding & Casualty Ins. Co. v. Bryant [113 Tex. 21] 240 S. W. 893, limited the character of disability to the performance of any and every kind of duty pertaining to *his occupation* [italics the court's], and here the policy is more comprehensive in that, 'if any work may be performed for compensation or profit, or any gainful occupation may be followed,' recovery is precluded," etc. This was introductory to the declaration noted above, that the court would not construe such provisions with literal strictness so as to defeat the evident intention of the parties.

It seems to us that the test declared in the Bryant Case should, with due observance of the principles on which it is based, be capable of expansion and restatement so as to apply to the "more comprehensive provisions" of the policy in the instant case. In any attempt to do this the first question that arises is: What is meant by the terms "any occupation or employment"? It is apparent that there was no similar question as to the meaning of "his occupation" in the Bryant Case. The strict and literal import of the language "any occupation or employment," even if further qualified by "for wage or profit," would no doubt include the selling of shoe strings or pencils on the street corners, or other like occupations or employments, the engagement in which is not prevented by a very great degree of physical disability. A strict and literal construction would also no doubt include the occupation of a bank president or other occupation or employment in which, because of special abilities or circumstances, one could engage with a degree of physical disability that would wholly incapacitate him from engaging in some other occupation or employment. We think "any occupation or employment" should be regarded as on a parity with "any and every kind of duty" (pertaining to his occupation) in the policy considered in the Bryant Case. Just as in that case, the ability to do *anything* was held to be inconclusive of the nonexistence of that degree of disability against which the indemnity was promised, so, here, we think that ability to engage in just any occupation would not be conclusive. According to this view, "any occupation or employment" would mean such as the insured was according to his ability, education, training, and experience enabled to engage in but for his injuries. Wall v. Continental Casualty Co., 111 Mo. App. 504, 86 S. W. 491. If the disability of the insured be not of that extent or degree which renders him "substantially" unable in the exercise of ordinary care to engage in *every* such occupation or employment, then he is not disabled within the indemnity provision. In other words, enlarging the test described in the Bryant Case only to cover the more comprehensive provisions of the policy now under consideration, it may be correctly said, we think, that the indemnity is promised in this policy if the injuries rendered the insured substantially unable in the exercise of ordinary care to engage in every occupation or employment, which, according to his ability, education, training, and experience he was otherwise qualified to engage in. Even to this test would be applicable the rule against strict construction which would have the effect to require that "engaging in" be understood as meaning not just any act or duty of one engaging in an occupation or employment

but a disability to do *substantially* every such material act or duty. We think that if the law be as thus stated, the allegations of plaintiff's petition failed to state a cause of action because of the omission of any averment to the effect that there was no occupation or employment in which the insured was by ability, education, experience, and training otherwise able to engage in for wage or profit, and in which by reason of his disability he was unable to engage.

 Defendant's next contention is to the effect that the evidence did not show a disability within the terms of the policy. If we have correctly determined the law, but have mistakenly applied it in reaching the conclusion that the plaintiff's petition was insufficient, then the second contention becomes material. According to the evidence, the policy in question insured all the employees of the Pure Oil Company and of a dozen or more subsidiary companies, comprising approximately 7,000 persons whose range of annual compensation was from $2,000 or under, to $6,000 or more. According to the contract, the employees were not classified with reference to their occupation, but only with reference to the amount of their annual compensation. One exception (if it be an exception) was that "service station agents" were included in one class separately from four other classes. The policy, by classifying "service station agents" separately from other classes, all based upon amount of compensation, shows that the employees insured were not within the contemplation of the contract engaged in one and the same occupation. But even if the terms of the contract did not make this clear, we think we must take judicial knowledge of the fact that the employees of an oil company with a dozen or more subsidiaries, altogether employing 7,000 persons, are not all engaged in the same occupation. The policy made no mention of plaintiff's occupation. We think, therefore, that the evidence discloses a contract for insurance which does not provide occupational insurance with reference to any particular occupation. According to evidence most favorable to the claim of plaintiff, his occupation was that of an oil field worker "doing most any kind of rough oil field work anywhere from a rough neck up to a pumping job and gauging." He was "gauging" at the time he was injured. "Some," he said, "called it pumping, oth-

ers called it gauging." In that capacity he was taking care of thirteen wells. The nature of his work, so far as detailed by evidence, was "to gauge those tanks and see after thirteen flowing wells," and make out "pressure charts" furnished by the company on each well, changing them every twelve hours to get a record of the pressure on the wells. When injured, he was changing a pressure chart up about twelve feet from the derrick floor. Plaintiff testified that his eyes, good before the accident, were at the time of the trial— about four years later—bad; one worse than the other; that he could not read at all. There was no evidence as to when his vision became impaired, or other evidence to connect the condition of his eyes with the injury. He testified that he had not worked since the injury. There was no testimony that he had tried to work and found that he could not. Further than as above detailed, the evidence did not show the nature of the duties of the different kinds of oil field work which plaintiff had done over a number of years and, therefore, did not show, nor afford a basis for the inference, that plaintiff's disability existed to the same degree with reference to the several lines of employment. There was no evidence to sustain a finding that there was no occupation which plaintiff, according to his ability, training, and experience was qualified to follow, but in which he was substantially unable to engage because of his disability. There was no evidence that the plaintiff was sick or was suffering any pain. There was no testimony produced to show that other than the defect in sight, there was anything wrong with any part of plaintiff's body from the standpoint of his ability to work, except that by the loss of the use of certain muscles he could not use his left arm and had a stiff neck, requiring him to turn his body when otherwise he might have turned his head. The testimony of his physician, when all summed up, was substantially to the effect that in so far as his injuries disabled him he had lost the use of one arm, had a stiff neck, and was in the opinion of the physician able to do the work of a man with one arm. There was no attempt to show by the evidence that of the various lines of oil field work which the plaintiff had over a number of years been doing, that there was any of them which he was substantially unable to pursue for a wage or profit. We are, therefore, of the opinion that the evidence

failed to show disability within the terms of the policy.

One of the issues submitted to the jury was: "Do you find from a preponderance of the evidence that such injuries sustained by plaintiff, if any, on or about February 5, 1931, totally disabled plaintiff?" In connection with same, the court gave an instruction or definition as follows: "In connection with the above issue you are charged that the term 'total disability' is necessarily a relative matter, and must depend chiefly upon the peculiar circumstances of the case and on the nature of the occupation or employment and the capacities of the person injured. It does not mean absolute physical disability of the plaintiff to transact any kind of business pertaining to his occupation, but exists if he is unable to do *any substantial portion of the work connected therewith.*" (Italics ours.) This definition was objected to on the ground, among others, that the same was not a definition of the term "total disability" as comprehended in the contract sued upon, and was contrary to the terms of said contract. Sufficient has already been said to show that in our opinion the definition was subject to the objection made, and was, therefore, erroneous. The real issue was not whether plaintiff was totally disabled within the usual and ordinary meaning of such term. The real issue was whether he was disabled to the extent that the policy undertook to indemnify. Properly, the issue should have been submitted in the terms of the policy provision. There would then have been no occasion to give a definition of "total disability," but as has already been indicated, it would perhaps have been necessary to define or explain what was meant by "engage in" and "any occupation or employment." The definition given authorized and required the jury to determine the question of disability solely with reference to the occupation that plaintiff was pursuing at the time of his injury, and to ignore any consideration of evidence that may have tended to show that he was not disabled, to the specified extent, from engaging in some other employment which he was otherwise able to do. The definition was further erroneous in substituting "*any* substantial portion of the work," etc., for "every substantial portion of the work." Under this definition inability to do substantially any (one) of all the duties of an occupation or employment would constitute inability to do every (one) of such duties —a patent contradiction. The words "any" and "every" are not synonymous, and therefore are not interchangeable. They are as different as "one" and "all." It must be admitted that this important fact was overlooked by us in Winters Mutual Aid Ass'n v. Reddin, 31 S.W.(2d) 1103.

Our conclusion upon the first point requires a remand of the case. The conclusion upon the second point would justify a reversal and rendition of judgment for the defendant, but that question we have passed upon only upon the alternative that plaintiff's pleading was sufficient. The question of error of the court in overruling the general demurrer is presented; and having reached the conclusion that it should be sustained, it is our view that the judgment of the trial court should be reversed and the cause remanded, which is accordingly so ordered.